## HOFFMANN, ET UX v. COUNTY TITLE COMPANY, INC.

[No. 444, September Term, 1964.]

---

*Decided October 15, 1965.*

The cause was argued before Prescott, C. J., and Hammond, Marbury, Oppenheimer and Barnes, JJ.

*Edwin Collier* for appellants.

*M. J. Cuff* for appellee.

Hammond, J., delivered the opinion of the Court.

The appellants, Mr. and Mrs. Hoffmann, sued the appellee, County Title Company, Inc., at law alleging that on February 19, 1959, they purchased from Joseph S. Devereux, Inc., the builder, a new house known as 11104 Newport Mill Road, Kensington, Maryland (Lot 17, Block S, Rock Creek Palisades) and made settlement at the office of the defendant title company which, for a valuable consideration, entered into an oral agreement with the appellants to retain from the purchase price sufficient funds to pay a prospective assessment for improvements to the street which abutted the property. It was further alleged that "it was agreed between the plaintiffs and defendant that sufficient monies would be held by the defendant until a bill for said street assessment was issued by Montgomery County, Maryland," and that such a bill was issued in February 1964 but was not paid by, the title company which had not withheld any monies for its payment.

At the trial before Judge Anderson and a jury there was no real dispute as to the facts, only as to what legal rights and obligations came into being by virtue of what the actors in this routine real estate drama said and did. The Hoffmanns signed a contract for the purchase of the house from the Devereux corporation in December of 1958. At that time they extracted from Joseph S. Devereux, the president of the selling corporation, an agreement that when the street improvement bill was rendered by the County the Devereux corporation would pay it and would sign a letter so certifying. Devereux was not present at the settlement and Hoffmann asked the title company if it had received such a letter. An official of the title company telephoned Devereux and as a result of the conversation Hoffmann was assured the promised letter would be sent to him by the Devereux corporation, and in the course of the telephone conversation the title company official said to Hoffmann, in Hoffmann's words from the stand: "You aren't going to hold up settlement on this account, are you; because there is money in escrow, anyway." Mrs. Hoffmann testified that the title company officer told them they would get the letter agreeing to pay the assessment from Mr. Devereux and that the officer said: "This isn't going to hold up settlement, I hope, because the money will be in escrow." The settlement was then concluded and the Hoffmanns, under the words "We hereby approve this statement," signed the settlement sheet. The sheet, which the Hoffmanns entered in evidence, showed as due by the purchasers the contract price of $19,730 and expenses of $527.04, or a total of $20,257.04. It showed a tax escrow of $175.00 for seven months' 1959 taxes but nothing opposite the heading "special assessments." It showed that the purchasers had paid at settlement the $527.04 due for expenses and that the seller had been paid $6,030.00 by the Hoffmanns and was to receive from a building association loan $13,700.00, the balance of the purchase price of $19,730.00. Nothing was shown as retained by the title company.

On February 25, 1959, six days after the settlement, the Devereux corporation sent a letter to Mr. and Mrs. Hoffmann "Re: Lot 17, Block S Rock Creek Palisades," which said: "This is to certify that all costs incurred in putting in the streets fronting the above described property will be at my expense and

no expense will be reflected to you for the installation of said street." A copy of the letter was sent to the title company and kept by it in the Hoffmann file. The title company waited until the letter was in hand before it recorded the deed (which it did on February 27), and only after the recordation did it disburse the net balance of the purchase price to the Devereux corporation.

An accountant's statement of the Devereux corporation as of March 1, 1959, nine days after settlement and three days after the letter, showed as a liability "Reserve for Assessments—$1,935.00" and Devereux testified this was set up to take care of assessments on the corner property and the one next to it, the Hoffmanns', when the assessments were levied.

The Hoffmanns did nothing for some three years in regard to assessment or the now claimed escrow deposit until in the fall of 1962 they began the process of selling their house preparatory to moving to New York, although the street had been installed and sidewalks and curbs put in in 1961. Hoffmann engaged the services of a lawyer in November 1962 to collect the improvement assessment. The lawyer got in touch with the building association which had lent the Hoffmanns money on the house and received a letter from the title company, to which the building association had referred his inquiry, that neither the association nor the title company had any escrow money for the assessment, none having been provided, since the Devereux corporation had promised to pay the assessment and the Hoffmanns seemed satisfied with this arrangement. On December 7, 1962, the lawyer wrote the Devereux corporation that Hoffmann had retained him to enforce its written promise to pay the street improvement assessment and demanded that the assessment be paid immediately. Unfortunately, the Devereux corporation had lost so much money in building operations in Virginia that it was completely without funds and had gone out of business, and Hoffmanns' lawyer was so advised. Hoffmann then paid the assessment, sold his house and sued the title company.

At the end of the testimony, Judge Anderson took the case from the jury for the reason that the evidence did not support the allegations of the declaration that there was an "oral agreement" that the title company would retain from the purchase

price sufficient funds to pay the prospective assessment. We think the trial court's action was correct.

It is settled that

"* * * no action will lie upon a contract, whether written or verbal, where such a contract is vague or uncertain in its essential terms. The parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties. Such a contract cannot be enforced in equity nor sued upon in law. * * * For a contract to be legally enforceable, its language must not only be sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do, but also must be sufficiently clear and definite in order that the courts, which may be required to enforce it, may be able to know the purpose and intention of the parties." *Robinson v. Gardiner,* 196 Md. 213, 217, and cases cited.

See also *Strickler Engineering Co. v. Seminar, Inc.,* 210 Md. 93; *Meyers v. Josselyn,* 212 Md. 266. Compare *Rocklin v. Eanet,* 200 Md. 351; *Quillen v. Kelley,* 216 Md. 396, 407. In the case before us the only possible evidence of a contract is the statement of the title company official which Mr. Hoffmann said was "* * * there is money in escrow, anyway," and Mrs. Hoffmann said was "* * * the money will be in escrow." What the statement meant or was intended to mean can be only conjectural in the setting and context in which it was made.

Admittedly the Hoffmanns would have raised no bar to the settlement if the letter from the Devereux corporation had then been in hand. The statement as to an escrow was made as part of a message from Devereux to the Hoffmanns via the title man (who was holding the receiver in the air as he relayed it) that the letter would be forthcoming, and could at least as well have been intended to mean—and to be understood to mean—that the Devereux corporation would reserve the money (as it initially

did) to cover the promised liability as that the title company would retain it. Who would hold the escrowed money was not specified—if it was not to be the Devereux corporation it could have been the building association, as the Hoffmanns later apparently thought it had been. One thing seems sure from the evidence considered in a light as favorable to the Hoffmanns as that evidence and proper inference from it will permit—neither they nor the title company at the time of settlement thought the title company had promised to retain any money to meet the anticipated improvement. Almost immediately after the Devereux message over the telephone, the Hoffmanns signed the settlement sheet which showed no money retained by the title company for special assessments or in escrow for any purpose other than taxes and showed that all of the purchase price was to be dispersed to the Devereux corporation. Hoffmann is a lawyer and he and his wife are scarcely in position to say they or the title company thought the title man's reference to an escrow meant the title company would retain money for the street improvements, after approving in writing a settlement which showed on the face of the writing they signed that no such money was to be retained.

When the Hoffmanns learned that the assessment had not been paid, they did not first go to the title company, they went to the building association. When they learned that neither the building association nor the title company had money in escrow, they did not then claim against the title company for breach of an obligation to them but, rather, immediately made demand on the Devereux corporation. Only when they learned it was out of business and penniless did they, some five years after the settlement, make a claim against the title company.

We think the trial judge had no choice but to rule as a matter of law that the Hoffmanns had no enforceable contract with the title company.

The Hoffmans, although they sued only on an alleged oral contract, sought below and seek here to recover on the theory that the title company was a trustee and they, as beneficiaries of a trust, wrongfully deprived of their beneficial interests, may recover from the trustee at law for money had and received.

Apart from the fact that the declaration alleged and relied on

only a contract, the short answer to this contention is that the weaknesses and infirmities in the evidence which kept the Hoffmanns from showing a contract preclude them from showing a trust. Judge Offutt for the Court said in *Dougherty v. Dougherty*, 175 Md. 441, 447:

> "An indispensable element of a valid trust is certainty, certainty as to the subject matter upon which it is to operate, certainty as to the object to which the subject matter is to be dedicated, or, as stated by Judge Digges for this court in *Sieling v. Sieling*, 151 Md. 536, 549, 135 A. 376, 381: 'Generally speaking, in order to create a valid trust three circumstances must occur: First, a definite subject matter within the disposition of the settlor; second, a lawful, definite, object to which the subject matter is to be devoted; third, clear and unequivocal words or acts devoting the subject matter to the object of the trust.' To establish a trust by parol 'the trust must be clear and the evidence of it convincing.' *Pope v. Safe Dep. & Tr. Co.*, 163 Md. 239, 249, 161 A. 404, 408; 65 *C. J., Trusts,* par. 47."

Here there were no "clear and unequivocal words or acts" devoting any subject matter to objects of a trust. Nor was "the trust clear and the evidence of it convincing."

*Judgment affirmed, with costs.*