## L & L CORPORATION *v.* AMMENDALE NORMAL INSTITUTE, ET AL.

[No. 6, September Term, 1967.]

*Decided January 5, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, McWILLIAMS and SINGLEY, JJ.

*Lawrence R. Sullivan* and *James R. Miller, Jr.,* with whom were *William M. Canby* and *Miller, Miller & Canby* and *F. DeSales Mudd* on the brief, for appellant.

*Ralph F. Berlow* for appellees.

HORNEY, J., delivered the opinion of the Court.

The question presented by this appeal is whether a written contract for the sale of land zoned rural-residential, contingent upon the obtention of such reclassification of the whole tract as would permit its use by a maker of electronic devices, had been modified by an ostensible oral agreement to substitute a general commercial reclassification of a part of the tract for the light industrial reclassification of the whole tract initially applied for. The lower court found that the seller was entitled to forfeit the escrow deposit as a consequence of the purchaser deciding to declare the written contract null and void.

The appellant-plaintiff is the L & L Corporation (L&L), a buyer and lessor of real estate. The appellee-defendant is the Ammendale Normal Institute (Christian Brothers), the land owner. The escrow agent, the District Title Insurance Company, was a nominal party below. The counterclaim of the Christian Brothers for the escrow deposit and for attorneys' fees and expert zoning witness fee were settled and dismissed as to the fees but not the deposit. The third party claim of L&L against ACF Industries (ACF), the electronics corporation, for reimbursement of damages in the event it was held that the purchaser was not entitled to a refund of the escrow

deposit, was disallowed by the lower court and its order deny-
ing the claim was not appealed. This appeal therefore is from
that part of the order allowing forfeiture and awarding the
escrow deposit to the Christian Brothers.

ACF desiring to locate in Prince George's County, communi-
cated through an agent (Robert Arthur) with L&L and asked
it to find a suitable tract of land. The president of L&L (Dr.
Laszlo Tauber) learned that an eleven-acre tract owned by the
Christian Brothers was available for sale which, with proper
zoning, would be suitable for the requirements of ACF. The
property, zoned as rural-residential, did not permit industrial
or commercial use. Negotiations with the Christian Brothers re-
sulted in the signing of the contract of sale that is the subject
of this controversy. L&L contemplated that eventually, after a
change in zoning had been realized and a building constructed
on the land, it would enter into a leasing agreement with ACF.

The contract of sale provided that the sale price would be
$261,360, based on a representation that the property contained
a total of 435,600 square feet at sixty cents per square foot.
L&L deposited $10,000 with the title company as earnest money
with the understanding that if the seller was unable to obtain
the zoning contemplated, the purchaser would have the right to
declare the contract null and void and in that event the deposit
was to be refunded without penalty or obligation.

After the contract was executed, a zoning application was
filed by the Christian Brothers requesting a reclassification of
the property from R-R (rural-residential) to I-1 (light indus-
trial). A few days before the zoning hearing a meeting took
place between the representatives of L&L (Dr. Tauber), the
Christian Brothers (Brother Anselm) and ACF (Mr. Arthur)
in the office of the attorney handling the rezoning application.
Thereat it was concluded that the possibility of obtaining I-1
zoning was slight but that an amended application requesting
C-2 (general commercial) zoning for approximately four acres
would probably be successful. When the president of L&L was
asked whether it would go along with the change, he replied that
the answer should come from the agent of ACF since if the
change was satisfactory to ACF it would be satisfactory to

L&L.[1] The agent stated that the suggested new zoning was satisfactory. His answer, as the trial judge pointed out, was based on his understanding (as a result of the discussion at the meeting) of what could and could not be constructed in terms of buildings under C-2 zoning as well as his belief that the rezoned acreage would take care of the immediate building requirements and that the remaining acreage (which was usable for parking purposes under rural-residential zoning) could eventually be rezoned. There was at that meeting no discussion as to the necessity of ACF having an antenna or whether one was permissible in a C-2 zone. Nor was there any discussion as to the price to be paid for the tract in the event the entire eleven acres were not commercially zoned. Furthermore, no written memorandum of the terms of the proposed amendment of the contract of sale was ever made.

C-2 zoning was granted for four and one-half acres in line with the request in the amended application. Thereafter the leasing negotiations between L&L and ACF broke down. At the outset of a meeting between the president of L&L and the agent of ACF, the latter told the former that an antenna was a necessity.[2] Since an antenna is not a permitted use in a C-2 zone, this created an obstacle to agreement, but not the only one, for the negotiators failed to agree as to a number of other matters

1. In view of the fact that the president of L&L knew that the agent of ACF had no authority to bind his principal and that "being satisfactory" to ACF meant ultimate approval by its board of directors, it appears that the president of L&L was merely seeking the opinion of the agent as to whether he thought the modification would be acceptable to ACF. Consequently, it further appears that there had been no meeting of the minds of L&L and ACF during the oral negotiations as to what "electronics firm zoning" meant. Initially, both parties understood that I-1 zoning would satisfy that contingency. When a change in zoning was suggested at the prezoning meeting, the president of L&L and the agent of ACF assumed that the substituted zoning would be satisfactory.

2. It was probably not until this meeting, and certainly not until after the zoning hearing, that any one of the interested parties realized that an antenna was not a permitted use in a C-2 zone absent the granting of a special exception.

as well. These, it seems, were brought about by the fact that the president of L&L had authority to act finally for his company while the agent of ACF did not because what he did for his principal was subject to the approval of its officers (and possibly the board of directors) after approval was obtained from the Federal Government.

The president of L&L, realizing that a special exception for an antenna could not be obtained before the expiration of the option period under the written contract, requested an extension of time. The Christian Brothers replied that they would grant an extension provided L&L placed an additional $5000 in escrow. L&L refused and decided to declare the contract null and void. The Christian Brothers reacted by attempting to forfeit the deposit. Thereupon this declaratory judgment proceeding was instituted.

The lower court found that the original contract had been modified at the meeting of the three most interested parties for the purpose of deciding whether to file an amended zoning application. The trial judge found that "even though they did not say so in so many words, it was contemplated that the identical price mentioned in the contract * * * would be paid for the entire eleven acres, even though zoned partially C-2 and the balance remaining at R-R."

We think the lower court erred in finding that a new obligation had been substituted for the old one. The court found as a fact that the parties orally modified the contract in that they agreed to accept the substituted zoning instead of that which was originally contemplated. As a part of the oral agreement, the president of L&L stated in effect that he would accept a substituted zoning *provided it was acceptable to ACF*. Apparently the court disregarded the oral contingency and heeded only the written contingency that a certain (though substituted) type of zoning should be obtained. In order to make or modify a contract there must be mutual assent for where there is a conditional acceptance or a counteroffer a contract is not made. *Fraley v. Null*, 244 Md. 567, 573, 224 A. 2d 448, 452 (1966). Also see *Post v. Gillespie*, 219 Md. 378, 386, 149 A. 2d 391, 396 (1959), and cases therein cited. While the agent of ACF

stated that the substitued zoning would be satisfactory, the parties concerned were thinking of different things. On the one hand, the president of L&L conditionally accepted the oral modification because he thought it would be acceptable to ACF. On the other hand, the agent of ACF thought it was acceptable because of what he understood was permitted in a C-2 zone. When ACF subsequently stated its need for an antenna it became evident to the negotiating parties that C-2 zoning without a special exception was not suitable. There was therefore no mutual assent which is as necessary to modify a contract as it is to make one. *Vincent v. Palmer,* 179 Md. 365, 372, 19 A. 2d 183, 188 (1941) ; *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 220, 37 A. 2d 305, 308 (1944). Also see *Keco Industries v. ACF Industries,* 316 F. 2d 513 (4th Cir. 1963), where, in citing *Vincent v. Palmer, supra,* it was said at p. 516 that "mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract."

Furthermore, we find nothing in the record to support the finding that the sale price would remain the same under the contract as modified. Admittedly, there was no discussion of price whatsoever. It would, however, be unrealistic to assume that L&L would pay the same price for the tract when only four and one-half acres were zoned commercial as it would had the entire tract been so zoned. The failure to agree on or even discuss an essential term of sale indicates that the mutual assent required to make or modify a contract was lacking. It is true, as was pointed out in *Quillen v. Kelley,* 216 Md. 396, 407, 140 A. 2d 517, 523 (1958), that courts do not favor the destruction of contracts because of uncertainty, but, as was said in *Robinson v. Gardiner,* 196 Md. 213, 217, 76 A. 2d 354, 356 (1950), "[i]f the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties." For the more recent cases on these points, see *Scheffres v. Columbia Realty Co.,* 244 Md. 270, 285, 223 A. 2d 619, 626 (1966), as to the first, and *Hoffmann v. County Title Co.,* 240 Md. 199, 203, 213 A. 2d 563, 565 (1965), as to the second.

We hold that L&L is entitled to the return of the $10,000 escrow deposit pursuant to the contingency stated in the written contract.

*Order of court reversed; appellee to pay the costs.*