Florence S. JACOBSON, Appellant,

v.

Mortimer C. JACOBSON, Appellee.

No. 5523.

District of Columbia Court of Appeals.

Argued March 23, 1971.

Decided May 10, 1971.

———◆———

Peter R. Sherman, Washington, D. C., for appellant.

John Alexander, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and KELLY and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This appeal followed a bifurcated trial on the issues after the parties consolidated three cases below.

The litigation commenced when appellant-wife brought suit against appellee-husband in September 1968, to enforce an escalation provision regarding support payments under a separation agreement. The agreement had been incorporated in a Nevada divorce decree procured by the husband in December 1963. In answer to the complaint he said he was not in arrears on support payments because the Nevada divorce decree was a nullity, since that court never had jurisdiction. Although the husband remarried in 1964, he counterclaimed for a declaration that he was still married to his first wife, and that he was entitled to a divorce from her on the ground of a one year voluntary separation and to a reduction in support payments.

A second action was then filed by the wife against the husband and his second wife, Helen Stein Jacobson, seeking a divorce on the ground of adultery, and asking for alimony, custody, child support and other relief, all of which were alternative to the wife's initial claim on the separation agreement and Nevada divorce decree.

The husband subsequently brought a third action against his second wife, seeking to annul their marriage on the ground that he was still married to his first wife.

At a pre-trial hearing on the original action, the court consolidated these three cases and set down for separate trial, the sole issue of the validity of the Nevada divorce decree with the remaining issues to be defined and scheduled for final trial following adjudication of the first issue.

At the first trial, the court below found that the husband had not established a bona fide residence in Nevada and therefore concluded that the divorce decree was a nullity, totally void and of no legal force or effect. That ruling is not contested on appeal. Subsequently, at a second pre-trial conference, the court concluded, and subsequently entered an order, that as a result of the voiding of the Nevada divorce decree, the husband's ensuing marriage to Helen Stein Jacobson was a nullity.

A second trial was then held to resolve the parties' conflicting claims for divorce [1] and to determine the enforceability of the agreement executed by the parties in 1963, and incorporated in the now void 1963 Nevada divorce decree [2] or, in the alternative,

---

[1] The wife contended she was entitled to a divorce on the ground that the husband had committed adultery; while the latter sought a divorce based on a one year voluntary separation.

[2] As of the date of the first trial with one exception, the husband had adhered to the agreement, paying the wife $5,400 a year. The agreement contained an escalator clause which directed the husband to pay 20% of his income over $15,000 to the wife who initiated this action when the husband failed to comply with this provision. It was stipulated that if the escalator clause were valid, the husband would be $2,700 in arrears as of the date of trial.

to consider the issues of alimony and child support for the wife. Following the second trial, the court below held that:

1. The wife's claim for divorce on the ground of adultery should be denied.

2. The husband's counterclaim for an absolute divorce on the ground of voluntary separation for one year should be granted.

3. The property settlement agreement, written and executed in 1963, should be declared null and void for lack of consideration to the husband, and because of the duress exercised by the wife and her counsel upon the husband and, further, because it was an agreement to a divorce in a court lacking jurisdiction.

4. The·wife was not entitled to alimony for her support but was entitled to custody of the minor son and to maintenance for his support until he concluded or terminated his college education.

5. The wife was allowed $1,772.65 suit money payable by the husband in installments of $100 a month.

In reversing in part and affirming in part the decision below, we do not find it necessary to decide all the claims raised by appellant, but only, first, whether the property settlement agreement was properly voided; second, whether the lower court erred in denying the wife a divorce on the ground of the husband's alleged adultery and correctly granted the husband a divorce on the ground of one year's voluntary separation; and lastly, whether the court below erroneously denied one half of appellant's claim for suit money and reasonable attorney's fees.

Appellant contends the lower court erroneously voided the property settlement agreement for lack of consideration. Perusal of the contract reflects that there was an abundance of consideration to support the agreement and it was error for the court below to decline to enforce it.

The agreement stated: "The consideration for this Agreement is the mutual promises and agreements herein contained." It need hardly be observed: "A promise is a sufficient consideration for a return promise. This has been true for at least four centuries, ever since bilateral contracts were recognized." [3]

Here the parties mutually agreed that four shares of jointly owned IBM stock would be split equally between them, and the husband was absolved from paying one half the existing family debts in the amount of $904.14. Each party agreed to the division of personal property and effects that had been worked out between them. The wife was given custody of the children and she, in turn, agreed to visitation rights for the husband. The latter, recognizing his legal and moral duty to support his wife,[4] made provision for her support and she agreed to accept those provisions in final settlement and satisfaction of her claim, and to "pay for the ordinary support and maintenance of the children". Further, each waived any and all rights to share in the property or estate of the other. Clearly the contract is amply supported by consideration[5] and it was error for the court below to hold otherwise.

Turning next to the question of duress, the wife contends that it was error for the court below to void the agreement for duress. She first argues that the issue of du-

3. 1 A. Corbin, Contracts § 142 at 611 (1963).

4. D.C.Code 1967, § 16–916.

5. See Kaplan v. Kaplan, 25 Ill.2d 181, 182 N.E.2d 706 (1962), where mutual releases of dower and rights in each other's estate were held to be sufficient consideration; and Woodruff v. Woodruff, D.C.Mun.App., 60 A.2d 538 (1948), holding there was ample consideration in the wife's refraining from seeking an award of alimony; and McGehee v. McGehee, 227 Miss. 170, 85 So.2d 799 (1956), where consideration was found in the waiver by each party to share in the property or estate of the other.

ress "was not properly before the court as it had not been raised in any of the pleadings nor set forth as an issue in the pretrial order," and that it "is an affirmative defense which must be pleaded or is waived." The wife relied on former GS Civ. Rule 8(c) as authority.

■ However, pursuant to former GS Civ. Rule 15(b): "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * *" Although the issue of duress therefore must be deemed as being properly before the court, we find that the evidence was wholly insufficient to support the court's conclusion that the agreement should be declared void because of duress exercised by the wife and her counsel upon the husband.

■ What constitutes duress depends on the facts of the particular case.[6] In the case before us, the only evidence offered by the husband was his own testimony on cross-examination at the first trial, to the conclusion that he was under "duress" when he executed the agreement. Up until this point there had been no issue of duress in the case. His testimony that he was "in a panic" when he received the agreement in Nevada does not help to show duress on the part of the wife or her lawyer who were in Washington, D.C. Lengthy negotiations had preceded the final execution of the separation agreement.[7] No less than three drafts of such agreements passed between the parties during the course of their negotiations before the husband, in the presence of Nevada counsel and after calling his Washington, D.C. lawyer, signed the agreement now in issue. The husband was adequately represented by counsel both in Washington, D.C. and

in Nevada. He was fully cognizant of the necessity of procuring a separation agreement and any pressure he might have felt was the result of his own doing.

It may be that the husband, had he not felt compelled to return to Washington, could have secured a more advantageous agreement. However, that is not a sufficient reason to void it. As we recently said in Davis v. Davis, D.C.App., 268 A.2d 515, 517 (1970), citing Le Bert-Francis v. Le Bert-Francis, D.C.App., 194 A.2d 662, 664 (1963):

> In some instances, of course, a party may enter into an agreement which in retrospect seems foolish or ill-advised, but the same is often said of the marriage itself.

We are compelled to hold that the lower court's finding of duress is unsupported by the record. Except for the husband's unexplained testimony that he was under duress, the evidence is to the contrary. Nor can we ignore the fact that the husband performed all aspects of the agreement for almost five years before balking at the escalator provision and raising the issue of duress. In Gallon v. Lloyd-Thomas Company, 264 F.2d 821, 826 (8th Cir. 1959), the court held that " * * * a contract entered into as a result of duress is not void, but merely voidable, and is capable of being ratified after the duress is removed. Ratification results if the party who executed the contract under duress accepts the benefits flowing from it or remains silent or acquiesces in the contract for any considerable length of time after opportunity is afforded to annul or void it."

■ One who asserts the invalidity of a separation agreement has the burden of proving that it is tainted by fraud,[8] duress

6. Carroll v. Fetty, 121 W.Va. 215, 2 S.E. 2d 521, 524, cert. denied, 308 U.S. 571, 60 S.Ct. 85, 84 L.Ed. 479 (1939).

7. The husband originally proposed a separation agreement which, with the exception of the escalator provision, hardly

varies in substance from the agreement allegedly signed under duress by him.

8. The court specifically found an absence of fraud surrounding appellee's execution of the agreement.

**284**

or overreaching. *Davis, supra; Le Bert-Francis, supra.* In the instant case, the husband has not sustained that burden. Therefore, the lower court is directed to reinstate the separation agreement, enforce the escalator provision and calculate the arrearages now due the wife. In view of the husband's current financial difficulties, we would suggest that the court also work out a payment schedule for the arrearages with him.

 The wife also argues that it was error to grant the divorce on the ground of one year's voluntary separation[9] where, six months after the parties separated, they participated in a divorce proceeding. She contends that the separation ceased to be "voluntary" once the now void Nevada divorce took place. We cannot agree.

■ The court below found that the parties' initial separation was mutually voluntary and that there were no attempts at reconciliation. The wife's willingness to participate in the Nevada divorce proceedings was sufficient evidence of her intent to live separate and apart from her husband. Furthermore, the court found that the separation satisfied the statutory period of one year and was devoid of cohabitation during that time, thus meeting the other statutory requirement.[10]

■ Lastly, the wife questions the court's award of counsel fees and suit money. The trial court has wide discretion in these matters, " * * * and unless a clear abuse of discretion has been shown, the award is upheld." McGehee v. Maxfield, D.C.App., 256 A.2d 576, 579 (1969). Having considered all the circumstances of this case, including its final disposition, we see no reason to disturb the lower court's award of fees.

9. D.C.Code 1967, § 16–904(a), establishes as ground for divorce, "voluntary separation from bed and board for one year without cohabitation." .

10. In view of this holding sustaining the validity of the divorce on the ground of

The wife's counsel has also requested suit money for this appeal. Accordingly, the husband is directed to pay the wife's costs of appeal in the sum of $349.75 and her attorney's fees in the sum of $250.

Although other contentions were raised on this appeal, we do not find it necessary to discuss them in view of our disposition of the case.

Reversed and remanded for disposition not inconsistent with this opinion.

voluntary separation, we do not reach the question of whether a divorce could have been granted on the ground of adultery.