Thornton W. OWEN, Jr., Appellant,

v.

Kathryn B. OWEN, Appellee.

No. 79–791.

District of Columbia Court of Appeals.

Argued June 17, 1980.

Decided Feb. 26, 1981.

---

Robert N. Levin and Alvin L. Newmyer, Jr., Washington, D.C., for appellant.

Elizabeth Guhring, Washington, D.C., with whom Pamela Forbes Dulles, Washington, D.C., was on the brief, for appellee.

Before KELLY and NEBEKER, Associate Judges, and BOWERS, Associate Judge,

Superior Court for the District of Columbia.*

BOWERS, Associate Judge:

In this divorce proceeding, appellant husband sought enforcement of a separation agreement between the parties wherein appellee wife, *inter alia,* relinquished her equity in the marital abode. Finding no "meeting of the minds" between the parties, the trial court refused to enforce the separation agreement and entered a $30,000 judgment against the husband, representing the additional amount necessary to insure that the wife received one-half the net proceeds from the sale of said residence. Because we find the trial Court's findings are without support in the record, we reverse.

The husband also seeks review of that portion of the trial court's ruling which—notwithstanding the separation agreement provision granting him visitation rights with the children during the entire summer months—limited said summer visitation to one-half of the summer months. Because the trial court's written findings of fact accompanying the summertime visitation order do not comport with Super.Ct.Dom. Rel.R. 52(a), we vacate the order and remand the record for further findings. Finally, in light of the trial court's consideration of the $30,000 judgment as a factor in setting the amount of attorney's fees awarded to the wife, and our reversal of that judgment, we likewise vacate the $1,500 award of attorney fees and remand the record for further findings pertaining thereto.

I.

The parties were married in 1968, and two sons were born of the marriage. In January 1977, the parties began to discuss divorce. Thereafter, the husband and wife retained separate and independent counsel and commenced negotiating a separation agreement. During this period of negotiation, the parties entered into a contract to sell their jointly-owned marital abode locat-

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

ed on Torchlight Circle in Montgomery County, Maryland (hereinafter Torchlight). During the same period, the husband contracted to purchase a new home on Woodacres Drive in Montgomery County (hereinafter Woodacres), which was to be the residence of the wife after their separation.

On July 25, 1977, shortly before the closing on the sale of Torchlight and the purchase of Woodacres the parties signed a comprehensive "Memorandum of Agreement" (hereinafter Agreement), addressing the issues of child custody and visitation, personal and real property, and alimony and child support. This document was signed by the parties and notarized in the presence of the wife's counsel in the offices of the husband's attorney. The portion of the Agreement here in dispute relating to the realty states in pertinent part:

Mrs. Owens is to execute the deeds or releases with respect to all properties in which Mr. Owen has any interest including the Torchlight residence and *she is to release whatever equities she may have in said properties.* On any properties where Mrs. Owens is liable on any notes of [sic] Deed of trust Notes, Mr. Owen will agree to indemnify her for any losses sustained on the same. [Emphasis added.]

The final paragraph of the Agreement, which is also pertinent to the dispute, provides as follows:

This document embodies the terms of an agreement that will be formulized at a later date (as soon as possible) so that the parties may proceed to settlement on Woodacres and Torchlight.

Although they continued to negotiate after executing the Agreement, the parties neither entered into a subsequent separation agreement nor rescinded the Agreement in question.

Torchlight was sold, and pursuant to the Agreement the husband received the net proceeds therefrom, amounting to approximately $196,000. The husband then con-

tributed $68,000 to the wife towards the purchase and renovation of Woodacres under the terms of the Agreement.

The parties separated on or about July 27, 1977, and the wife subsequently sued for absolute divorce and prayed that the court determine all issues of property apportionment and child custody and visitation in the absence of a "finalized" agreement between the parties. The husband answered and filed a counterclaim seeking judicial ratification of the existing Agreement. In her reply to the counterclaim, the wife admitted execution of the Agreement but sought to avoid its enforcement on the grounds that it was not final or complete.

At trial, the wife admitted that at the time of its execution she agreed to every provision of the Agreement but asserted that she was displeased with the overall "imprecision" of it. She testified that she signed the Agreement because her husband threatened to disclose an embarrassing fact about her personal history. She also testified that she signed the Agreement in reliance upon the husband's representations that (1) $45,000 of the proceeds of the Torchlight sale had to be given to his father to repay a *joint* debt of husband and wife, a representation which was not true; (2) the Agreement was necessary to effectuate the sale of Torchlight; and (3) the Agreement would be finalized later. The husband repeatedly objected to any evidence of duress and fraud because these matters were not affirmatively set forth in wife's pleadings, as required by Super.Ct.Dom.Rel.R. 8(c). *Jacobson v. Jacobson*, D.C.App., 277 A.2d 280 (1971). While the wife referred to evidence of fraud and duress in her brief, her counsel abandoned these theories of relief at oral argument and argued, rather, that the Agreement simply did not, and was not intended to, manifest a complete "meeting of the minds."[1]

The trial court refused to enforce that portion of the Agreement wherein the

---

1. Indeed, following the close of the wife's evidence at trial, her counsel remarked:

We have not made any allegations of fraud and duress in the form of seeking to rescind an agreement. Our position is, and always has been, that there, in fact, has never been an agreement of these parties. [B.77].

wife released her equity in Torchlight, finding that there was no "meeting of the minds" with respect to the distribution of the proceeds of the pending sale thereof.[2] These findings were apparently based on the final paragraph of the Agreement and the fact that the parties continued to negotiate after the execution of said Agreement.[3] The trial court found that under Maryland law each party was entitled to one-half of the net proceeds of the sale of Torchlight, that is $98,000. The wife, having received $68,000 of the proceeds directly from the husband, was awarded a judgment of $30,000 against the husband. The trial court gave custody of the children to the mother and appears to have granted the husband visitation with the children for one-half of the summer and ordered the parties to submit a schedule of visitation for all other times.[4] Finally, the court awarded $1,500 in attorney's fees to the wife. The husband appealed and seeks reversal of the $30,000 judgment against him, the limiting of summertime child visitation to him for only one-half of the summer, and the award of attorney's fees to the wife.

## II.

■ As a threshold question, this court must decide whether the law of the District of Columbia or the State of Maryland applies in determining the formation of the Agreement.[5] Both jurisdictions view such separation agreements as contracts, subject to the same rules governing other contracts. *Compare Lanahan v. Nevius*, D.C.App., 317 A.2d 521, 524–25 (1974), *with Eckstein v. Eckstein*, 38 Md.App. 506, 511, 379 A.2d 757,

761 (1978), and Md.Code Ann. art. 16, § 28. In determining the formation and validity of contracts, the District of Columbia applies the law of the jurisdiction with the "more substantial interest in the resolution of the issue." *Fowler v. A & A Co.*, D.C. App., 262 A.2d 344, 348 (1970). The Agreement was made by Maryland residents in Maryland and concerned real estate situated in that state. The only connection of this matter to the District of Columbia is that the husband now resides here. Accordingly, the law of Maryland applies.

■ The trial court found the Agreement was not enforcible because there was no "meeting of the minds" as to the distribution of the proceeds from the sale of Torchlight. The laws of Maryland and the District of Columbia do not differ on the fundamental principle of contract law which applies here. It is well established that

One of the essential elements for formation of a contract is a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms. *Maryland Supreme Corp. v. Blake Co.*, 279 Md. 531, 369 A.2d 1017 (1977); *Post v. Gillespie*, 219 Md. 378, 149 A.2d 391 (1959). The failure to agree on or even discuss an essential term of a contract may indicate that the mutual assent required to make or modify a contract is lacking. *L & L Corp. v. Ammendale*, 248 Md. 380, 236 A.2d 734 (1968). . . . [*Klein v. Weiss*, 284 Md. 36, 63, 395 A.2d 126, 141 (1978).]

2. The findings of fact and conclusions of law of the trial court appear to have been drafted in their entirety by counsel for the wife on her law firm stationery and adopted without modification by the trial judge. Accordingly, a stricter review of the record is in order. *District Concrete Co., Inc. v. Bernstein Concrete Corp.*, D.C.App., 418 A.2d 1030, 1035 (1980).

3. It also appears that the court considered evidence of alleged misrepresentations made by the husband to the wife as grounds for not enforcing the agreement. This was error. Fraud was not affirmatively pleaded as required under Super.Ct.Dom.Rel.R. 8(c), nor

was it tried with the express or implied consent of the parties. Hence, this evidence was inadmissible. *Jacobson v. Jacobson, supra.*

4. This is unclear because in the "Findings of Fact" the trial court states that each party should have the children for one-half of the summer, while in the accompanying order there is no mention of summertime visitation. Both parties were simply ordered to submit a proposed visitation schedule.

5. It should be noted that both parties have argued that the law of Maryland should apply.

*Accord, Hollywood Credit Clothing Co. v. Gibson*, D.C.App., 188 A.2d 348 (1963). The Agreement unambiguously obligates the wife to

> execute the Deeds or releases with respect to all properties in which Mr. Owen has any interest including the Torchlight residence and *she is to release whatever equities she may have in said properties.* [Emphasis added.]

The wife testified that she understood and agreed to this provision. By relinquishing her equity [6] in Torchlight, she necessarily relinquished any rights to the proceeds from its sale. Therefore, the parties *did* reach an agreement as to the proceeds of the sale; the wife would get none.

 The final paragraph of the Agreement states:

> This document embodies the terms of an agreement that will be formulized at a later date (as soon as possible) so that the parties may proceed to settlement on Woodacres and Torchlight. [Emphasis added.]

The trial court found that this demonstrated the parties' intent to reach an agreement as to the proceeds of the sale at a future date. To be final, a contract must "extend to all the terms the parties intend to introduce, and material terms cannot be left for future settlement." *Peoples Drug Stores v. Fenton Realty Corp.*, 191 Md. 489, 494, 62 A.2d 273, 276 (1948); *accord, City Stores Co. v. Ammerman*, 266 F.Supp. 766, 772 (D.D.C. 1967), *aff'd*, 129 U.S.App.D.C. 325, 394 F.2d 950 (1968). However, whatever ambiguities may be inherent in the term "formulized," [7] the final paragraph expresses a meeting of the minds with respect to the *terms* of the

Agreement, including the property settlement which is itself unambiguous and does not leave any material issues for future resolution regarding the release of wife's equity interest. At most, the final provision of the Agreement expresses an intent to allow for renegotiation in the future. In fact, the parties did continue to negotiate after the Agreement was executed.[8] A provision in a contract which calls for renegotiation at a future date does not render said contract unenforcible as being too indefinite or uncertain. *Wolfe v. Wolfe*, 12 Md.App. 581, 583, 280 A.2d 1, 3 (1971).

Therefore, the trial court's findings are without support in the record, and the $30,000 judgment against the husband is reversed.

### III.

 The Agreement provides that the children are to be with the husband, at his option, during the summer. The parties agree, however, that the trial court is not bound by an agreement between the parties respecting the custody of, and visitation with, minor children. The controlling consideration is the best interests of the children, a determination entrusted to the sound discretion of the trial court. *Utley v. Utley*, D.C.App., 364 A.2d 1167, 1170 (1976); *Willcher v. Willcher*, D.C.App., 294 A.2d 486, 488 (1972).[9] The trial court awarded the children to the husband for only one-half of the summer. The portion of the court's "Finding of Facts" which addresses this issue simply states that the parties are "in conflict" over the placement of the children during the summer and that "the

---

6. "Equity" has been defined as:

 The remaining interest belonging to one who has pledged or mortgaged his property, or the surplus value which may remain after the property has been disposed of for the satisfaction of liens. The amount of value above the total liens or charges. [Black's Law Dictionary 484 (5th ed. 1979).]

7. *Webster's Second New International Dictionary* 993, (1961) defines "formulize" as "to formulate" and defines "formulate" as " to reduce to, or express in or as in, a formula; to put in a systematized statement or expression."

8. They did not, however, enter into a subsequent agreement. Nor did they rescind the Agreement in question.

9. The circumstances of the present case are distinguishable from those in *Rice v. Rice*, D.C.App., 415 A.2d 1378 (1980), where a separation agreement was incorporated into the final divorce decree and, therefore, the visitation agreement between the parties could only be modified if there were sufficient changed circumstances.

Court believes that they should each have the children for one-half of the summer." This is but a bare legal conclusion, unsupported by any underlying factual findings. Super.Ct.Dom.Rel.R. 52(a) provides, in pertinent part:

> In all actions tried upon the facts the court shall make written findings of fact, [and] separate conclusions of law .....

Without such findings the appellate tribunal is left, as we are here, with "the end result and not with the legal and factual predicate for that result," and cannot determine whether the trial court properly exercised its discretion. *O'Meara v. O'Meara*, D.C.App., 355 A.2d 561, 563 (1976). We conclude that the trial court's lack of factual findings renders the record re-visitation wholly inadequate for purposes of appellate review. Accordingly, the trial court's ruling regarding summertime visitation will be vacated and the record remanded for further findings of fact.

### IV.

Finally, the husband claims the trial court erred in awarding the wife's attorney $1,500 in fees. The award of attorney's fees in a domestic relations case is committed to the sound discretion of the trial court and will not be disturbed by this court unless that discretion has been abused. *Finch v. Finch*, D.C.App., 378 A.2d 1092, 1094 (1977). The trial court should consider many factors, including results obtained by the attorney's services. *Ritz v. Ritz*, D.C.App., 197 A.2d 155, 156–57 (1964). Here, the trial court stated that it took into consideration the $30,000 judgment granted the wife in awarding attorney's fees. In light of our reversal of that judgment, we hereby vacate the award of attorney's fees and remand the record for further consideration thereof.

*Reversed in part, and vacated and remanded in part.*