73 F.3d 356
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 COATING ENGINEER (PRIVATE) LIMITED, Plaintiff-Appellant,
v.
THE ELECTRIC MOTOR REPAIR COMPANY, Defendant & Third-Party
Plaintiff-Appellee,
v.
ROMAC SUPPLY COMPANY, INCORPORATED, Third-Party Defendant.
 No. 94-2205.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1995.
Decided Dec. 28, 1995.
 
 ARGUED: Kathy Moshggou-Cotto, Masgood Hamid Mir, MIR & ASSOCIATES, P.C., Washington, D.C., for Appellant.
 Bayard Z. Hochberg, KOCHBERG, CHIARELLO, COSTELLO & DOWELL, Towson, Maryland, for Appellee. ON BRIEF: T. Bruce Hanley, Towson, Maryland, for Appellee.
 Before HAMILTON and LUTTIG, Circuit Judges, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The appellant, Coating Engineer (Private) Limited (hereinafter referred to as "Coating"), appeals from the district court's memorandum opinion and order entering final judgment in favor of the appellee, The Electric Motor Repair Co. (hereinafter referred to as "EMR"). Following a bench trial, the court entered judgment in favor of EMR, finding that no contract existed between the parties due to lack of mutual assent.[1] Finding that the district court's decision was not clearly erroneous, we affirm.[2] In the spring of 1991, Coating, a Pakistani corporation in the business of civil engineering, concrete repair and fabrication and erection of machinery, requested from EMR an export price quote for purchase of two electric motors to be used by the Irrigation Department of the Pakistani government, as well as a quote for the repair of several motors. EMR, as its name suggests, is in the business of the repair and sale of electric motors.
 
 
 2
 Throughout 1991, Coating and EMR engaged in negotiations concerning the purchase of new electric motors or the repair of the damaged ones. After receiving various quotes from EMR, Coating determined that it would be more cost effective to purchase reconditioned motors than to repair the existing motors. Coating then provided EMR with the specifications for basic or "off-the-shelf" motors and EMR, in turn, began negotiating with a third company, Romac, to have it locate and supply the motors. Between June of 1991 and July of 1992, the parties engaged in extensive negotiations in an attempt to reach an agreement as to the purchase of the motors. During that time, the parties tried to reach an agreement on details such as a performance bond to be submitted by EMR, the exact dimensions of the motors, and the requisite warranty, and, as a result, no contract was ever signed.
 
 
 3
 On June 24, 1992, EMR sent Coating a proforma invoice which it classified as an "offer" valid only until July 30, 1992. The information requested in the invoice was not supplied to EMR by July 30, 1992. In addition, EMR's supplier, Romac, informed EMR that it was unable to meet the specifications provided by Coating and could not deliver the motors. Consequently, EMR was unable to supply the motors to Coating and, by November of 1992, negotiations between the two parties completely collapsed. Coating was never able to supply the requisite motors to the Pakistani government.
 
 
 4
 Coating contends that there was a binding contract between the two parties, as Coating and EMR had agreed to all material terms of the contract. The district court held that under the Maryland Uniform Commercial Code and the common law of Maryland, which govern the present dispute, there was not a valid, binding contract between the parties as there was never a meeting of the minds on several essential terms.
 
 
 5
 Under Maryland law, a contract is not valid unless "the parties express themselves in such terms that it can be ascertained to a reasonable degree of certainty what the agreement meant. If the agreement is so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void." Marmott v. Maryland Lumber Company, 807 F.2d 1180, 1183 (4th Cir.1986) (quoting Strickler Engineering Corp. v. Seminar, Inc., 122 A.2d 563, 568 (Md.1956)). This court has previously recognized that under Maryland law, it is essential that the parties be in agreement as to material terms for a contract to be established. Marmott, 807 F.2d at 1184, (citing Klein v. Weiss, 395 A.2d 126, 141 (Md.1978)); see also, L & L Corp. v. Ammendale Normal Institute, 236 A.2d 734, 726 (Md.1968) ("In order to make or modify a contract there must be mutual assent for where there is a conditional acceptance or a counteroffer a contract is not made").
 
 
 6
 We hold that the district court was not clearly erroneous in finding that, under Maryland contract law, there was no valid contract between Coating and EMR. The evidence before the district court showed only a series of negotiations which never led to a meeting of the minds on the essential terms. The pro forma invoice relied on by Coating to show a contract clearly stated that it was an offer and, as such, it was never accepted by Coating. Coating did not comply with the terms of the offer and it expired on July 30, 1992, without acceptance by Coating.
 
 
 7
 Furthermore, an agreement was never reached as to the applicable warranty provisions. The district court correctly found that the language of the June 24, 1992 pro forma invoice was ambiguous with respect to the warranty, and the testimony at trial indicated that the parties attached different meanings to the "General Provision of Warranty" section in the invoice. It was Coating's position at trial that the warranty provisions contained in the pro forma invoice referred only to exclusions from the warranty, and that all other eventualities would be covered under EMR's warranty. According to EMR, the warranty would only cover the performance of the motors. (App. at 363-67 and 107-08.)
 
 
 8
 Finally, Coating never provided EMR with complete information concerning the specifications for the motors, which were included in a bid package received by Coating from the Pakistani government. Testimony at trial indicated that Coating continually represented that the motors to be provided were standard, off-the-shelf motors, whereas, in actuality, the motors needed by the Pakistani government were more sophisticated and could not be supplied by EMR for the price which the government was willing to pay. (App. at 188-193.) Thus, the parties never reached an agreement as to the exact specifications of the motors which the Pakistani government wished to purchase. Without a reasonable description of the goods to be sold, there can be no meeting of the minds and, thus, no contract.
 
 
 9
 The district court correctly found that the parties failed to agree on several material terms of the contract as required under Maryland contract law. Based on the authorities set forth above, as well as the reasoning of the district court, we find that there was no valid contract between the parties due to a lack of mutual assent.
 
 
 10
 The judgment of the district court is therefore affirmed.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 The district court also found that, assuming a valid contract did exist, Coating did not perform its implied obligations in good faith, which rendered the contract void. As we affirm the district court's decision on the ground that no contract was ever formed, we do not reach this second issue
 
 
 [2]
 Although the district court did not refer to its memorandum opinion nor its order entering judgment as findings of fact, we find, and the parties do not dispute, that the district court's opinion did constitute findings of fact following the bench trial held on January 31, 1994. Accordingly, Rule 52(a) of the Federal Rules of Civil Procedure provides that the district court's findings shall not be set aside unless "clearly erroneous."