620 A.2d 305

**Leonilla Baginski HORSEY**

v.

**Elmer E. HORSEY.**

**No. 118, Sept. Term, 1990.**

Court of Appeals of Maryland.

March 8, 1993.

George F. Obrecht, III, Obrecht and Obrecht, Baltimore, on brief, for petitioner.

Steven M. Caplan, Nancy S. Friedman, Weinberg & Green, Baltimore, on brief, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., EDWARD A. DeWATERS, Jr., Administrative Judge of the Third Judicial Circuit (Specially Assigned) and WILLIAM H. McCULLOUGH, Administrative Judge of the Seventh Judicial Circuit (Specially Assigned), JJ.

ELDRIDGE, Judge.

The principal issue in this case is whether a trial court's order, directing the parties to submit their dispute to arbitration, is a final judgment and thus appealable. Other issues relate to waiver of arbitration and the provisions of a separation agreement concerning spousal support.

On August 16, 1973, Elmer and Leonilla Horsey separated after nineteen years of marriage. That day, they executed a separation agreement which contained provisions relating, *inter alia,* to the parties' voluntary separation, custody of the parties' children, child support, "alimony," child education expenses, insurance payments, the marital home, expenses for the marital home, division of other property and bank accounts, and counsel fees. The agreement stated that "[t]here can be no modification of this Agreement,

... or release from any obligation imposed hereby, except by written instrument duly executed." The final provision of the agreement "stipulated that this Separation Agreement, or the essential parts thereof, shall be incorporated in a decree hereafter passed, by any Court of competent jurisdiction...."

The paragraph of the separation agreement dealing with spousal support provided that Mr. Horsey was to pay Mrs. Horsey "alimony" of $350.00 per month for the first five years following their agreement, and $300.00 per month thereafter. Mr. Horsey's obligation to make these payments was to terminate upon Mrs. Horsey's remarriage or death. The agreement, however, did not provide that the payments would terminate upon Mr. Horsey's death. The agreement recited that these amounts were "fixed in light of the fact that the Wife has no income or resources of her own," and made the following provision for modification of the payments:

"If at any time after a period of eleven (11) years from the date of the signing of this Agreement the Wife secures employment, or receives income from any other source, the parties shall attempt to agree upon a fair reduction in the alimony payments.... If on the matter of any reduction or subsequent increase in alimony payments the parties are unable to reach a prompt agreement, the matter shall be submitted to arbitration in accordance with the provisions hereinafter set forth. The Wife shall promptly notify the Husband of any change in her financial circumstances requiring an adjustment in the alimony payments."

Although the above-quoted language from the agreement referred to arbitration "provisions hereinafter set forth," the agreement in fact failed to set forth any such arbitration provisions.

After the parties entered into the separation agreement, but before the divorce decree, Mrs. Horsey received an employment opportunity as a secretary for the Kent County Board of Education. She discussed with Mr. Horsey her

intention to accept employment with the Board of Education, and Mr. Horsey indicated "that he didn't think [Mrs. Horsey] needed to go to work." Nonetheless, Mrs. Horsey became employed on June 24, 1974, as a secretary for the Board at an annual salary of $5,100.00. After Mrs. Horsey became employed, she notified Mr. Horsey and informed him of the health insurance premium for her and the children under the Board's group health insurance plan, as Mr. Horsey was obligated to pay this under the separation agreement. Since the rates under the group health insurance plan changed every year, she contacted Mr. Horsey each year after she became employed and informed him of the new rate. Mrs. Horsey is still employed as a secretary for the Board of Education, and in 1989 her annual salary was between $20,000 and $21,000.

A divorce decree was signed and filed on September 26, 1974. The decree granted an absolute divorce, provided for the custody of the parties' minor children, set forth amounts of child support to be paid by Mr. Horsey, and provided for visitation. The decree then recited that "[Mr.] Horsey shall pay alimony to [Mrs.] Horsey, as set forth in the Separation Agreement and that the Separation Agreement be incorporated as a part of this Decree."

Mr. Horsey made monthly payments in accordance with the terms of the agreement. On July 8, 1988, Mr. Horsey, by his attorney, wrote to Mrs. Horsey requesting a reduction in alimony payments. The letter alleged that Mrs. Horsey had breached the separation agreement by failing to notify Mr. Horsey of the "change in her financial circumstances." Mr. Horsey sought a permanent reduction in the monthly payments and a retroactive adjustment of the payments made since August 1984. The letter requested that Mrs. Horsey contact Mr. Horsey's attorney within fifteen days, and it concluded that, if she did not do so, the attorney would view this as a failure to cure her breach of the agreement and would advise Mr. Horsey to exercise all legal remedies available to him.

On July 26, 1988, Mrs. Horsey's attorney responded in writing to the July 8th letter, denying that Mrs. Horsey had breached the agreement. Mrs. Horsey's attorney pointed out that Mr. Horsey had known of Mrs. Horsey's employment for years, and that Mr. Horsey had called her at work on occasion. According to her attorney, Mr. Horsey had waived any right to seek modification of the support payments, and any such right was barred by laches or by limitations. The letter reviewed the relevant Maryland law, and stated that the monthly payments "do not constitute technical alimony and are therefore not modifiable except in accordance with the provisions of the Agreement." The attorney further asserted that the arbitration remedy was not available to the parties because no provisions for its implementation were set forth in the agreement. The attorney concluded that the payment amount was "fairly fixed by the provisions and omissions" of the agreement.

Mr. Horsey's attorney responded by letter on August 15, 1988, noting his disagreement with the conclusions expressed in the July 26th letter and informing Mrs. Horsey's attorney that Mr. Horsey intended to file suit against Mrs. Horsey. At this point, Mr. Horsey stopped making spousal support payments to Mrs. Horsey. On October 15, 1988, Mrs. Horsey's attorney notified Mr. Horsey's attorney of Mr. Horsey's failure to continue making payments. He also stated that Mrs. Horsey had repeatedly tried to contact Mr. Horsey and had left detailed messages with his secretary but was unable to speak to him directly. Further communications between the parties' attorneys failed to resolve the dispute.

On January 12, 1989, Mr. Horsey filed in the Circuit Court for Kent County a "Petition of Contempt" against Mrs. Horsey. In the petition, Mr. Horsey alleged that Mrs. Horsey had breached the separation agreement, stating: "After a period of eleven years after the date of the signing of the agreement, Defendant [Mrs. Horsey] did, in fact, secure employment or receive income from another source, thereby requiring that she notify Plaintiff of the same and

that the parties attempt to agree upon a reduction in her alimony." The petition went on to assert that, "[i]n violation of the parties' agreement and thus in contempt of [the divorce] Decree, Defendant failed to notify Plaintiff of the change in her financial circumstances, resulting in her receiving alimony payments to which she was at least in part, not entitled." Mr. Horsey sought a judgment of contempt against Mrs. Horsey, an accounting of her income since August 17, 1984, a modification of the divorce decree as to his "alimony" obligation, a repayment of sums which were allegedly overpaid or adjustments in future payments to reflect such overpayments, and reasonable attorneys' fees.

One week later, on January 19, 1989, Mrs. Horsey filed in the Circuit Court for Kent County a "Complaint for Enforcement of Marital Separation Agreement ...," seeking specific performance of the contract. She alleged that Mr. Horsey had wrongfully terminated his support payments as of July 1988 and that neither of the terminal events provided by the agreement—her death or remarriage—had occurred. She sought a reinstatement of future payments, the arrearages plus interest, her costs, expenses and reasonable attorneys' fees. Thereafter, Mr. Horsey requested that his "Petition of Contempt" be treated as a "counterclaim" to Mrs. Horsey's complaint.

Neither party requested arbitration, or sought a stay of the judicial proceedings pending arbitration, at any point in their correspondence, in their pleadings or other documents filed in the circuit court, or at trial before the circuit court. At the trial, counsel for both parties expressly stated, *inter alia*, that the arbitration clause had been "waived."

In addition, Mrs. Horsey argued at trial that the spousal support was not technical alimony, was merely contractual support, and could not be modified by the court except in accordance with the terms of the parties' agreement. Her position was that, in light of the wording of the agreement, no event triggering modification of the $300.00 monthly spousal support had occurred and that, therefore, Mr. Horsey was obligated to pay $300.00 per month. Mrs. Horsey

also claimed that, considering her expenses, her "over-all" financial circumstances had not changed from the time of the parties' separation. The trial judge, however, sustained Mr. Horsey's objection to evidence supporting this claim, and the judge would not admit testimony and other evidence concerning her financial circumstances other than evidence of her income, ruling that such evidence was not relevant under the agreement. The judge stated: "I don't want to hear about out-go, only income, because that's what the agreement said." Mrs. Horsey's counsel also argued that, even if an event triggering the modification provisions of the agreement had occurred, the modification provisions were unenforceable and Mr. Horsey remained obligated to pay $300.00 monthly. Counsel maintained that "there is no contract remedy, for the court to get involved, for their failure to agree. And the court can't make an agreement for them that they haven't made themselves."

Mr. Horsey's position at trial was that, even though Mr. Horsey knew in 1984, and in fact knew from 1974 on, that Mrs. Horsey was employed by the Board of Education, and even though this information had been given to him by Mrs. Horsey, nevertheless, at the end of the eleven year period in 1984, Mrs. Horsey was required to give "notice formally" that she was employed. Mr. Horsey's counsel argued that Mrs. Horsey's failure to give such notice of her employment in 1984 constituted a breach of the agreement and contempt of the 1974 decree.[1] In addition, Mr. Horsey contended that the "alimony" under the agreement "was in the nature of rehabilitative alimony," and the fact of Mrs. Horsey's employment at the end of the eleven year period in 1984 triggered the modification provisions of the agreement as incorporated in the decree. Mr. Horsey argued that he was entitled "at this time [to] a reduction to zero, subject to whatever rights Mrs. Horsey has under the agreement in

---

1. At one point during the trial, Mr. Horsey's attorney stated that "I will stipulate that our contempt petition is not about her failure to confer in 1988; it's her failure to notify him in 1984...."

the future." Mr. Horsey alternately appeared to contend that the spousal support was "technical alimony" and thus could be modified by the court.

The evidence at trial consisted solely of Mrs. Horsey's testimony, the separation agreement, and the various items of correspondence between the parties or their attorneys. Mr. Horsey declined to testify, and rested his case without putting on any evidence.

Thereafter the trial judge filed an opinion and order in which he found that Mrs. Horsey did not breach the agreement, and he ordered that Mr. Horsey's petition of contempt/counterclaim be dismissed. The judge also found that Mrs. Horsey has had no other source of income except her salary from the Board of Education. The trial judge construed the separation agreement to mean that the fact of Mrs. Horsey's employment after the end of the eleven year period in August 1984 "is a triggering device requiring adjustment of the alimony.... It is the *fact* of employment, and not its commencement date, which triggers the adjustment procedure under the Agreement." The trial court's order continued as follows:

"[T]he parties are directed to 'attempt to agree upon a fair reduction in the alimony payments' within 90 days of the date hereof. If they fail to agree within said period of time, the matter shall be submitted to [an arbitrator], who shall arbitrate the matter for the parties. [The arbitrator's] decision shall constitute a binding determination of this Court on the parties, subject to appeal rights, as in all matters.

"The Court highlights for the parties, and [the arbitrator], that the Agreement contains two clear limitations: First, there must be a reduction of alimony in some amount; and Second, alimony cannot be totally terminated because the events permitting that have not occurred.

"The costs of this proceeding (and the Arbitrator, if any) are assessed against both parties equally."

Mrs. Horsey took an appeal to the Court of Special Appeals. Mr. Horsey did not file a cross-appeal. The Court of Special Appeals, in an unreported opinion, dismissed the appeal for lack of a final appealable judgment. The intermediate appellate court reasoned that the order was not final because it failed to settle the rights of the parties. Subsequently, this Court granted Mrs. Horsey's petition for a writ of certiorari.

## I.

■ The threshold issue in this case is whether the circuit court's order was a final judgment and therefore appealable under Maryland Code (1974, 1989 Repl.Vol., 1992 Cum. Supp.), § 12–301 of the Courts and Judicial Proceedings Article.[2] Mr. Horsey argues that the circuit court's order was not a final judgment because it allowed Mrs. Horsey to pursue her claim through the arbitration process.

■ Contrary to the view expressed by the defendant and the Court of Special Appeals in this case, a trial court's order sometimes may constitute a final appealable judgment even though the order fails to settle the underlying dispute between the parties. Where a trial court's order has "the effect of putting the parties out of court, [it] is a final appealable order." *Houghton v. County Comm'rs. of Kent Co.,* 305 Md. 407, 412, 504 A.2d 1145, 1148 (1986), and cases there cited. *See, e.g., Wilde v. Swanson,* 314 Md. 80, 85, 548 A.2d 837, 839 (1988) ("An order of a circuit court ... [may be] a final judgment without any adjudication by the circuit court on the merits"); *Doehring v. Wagner,* 311 Md.

---

**2.** Section 12–301 states as follows:
"Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment."

272, 275, 533 A.2d 1300, 1301–1302 (1987) (trial court's order "terminating the litigation in that court" was a final judgment); *Walbert v. Walbert,* 310 Md. 657, 661, 531 A.2d 291, 293 (1987) (circuit court's unqualified order was a final judgment because it "put Denise Walbert out of court, denying her the means of further prosecuting the case at the trial level"); *Houghton v. County Com'rs of Kent Co.,* 307 Md. 216, 221, 513 A.2d 291, 293 (1986); *Concannon v. State Roads Comm.,* 230 Md. 118, 125, 186 A.2d 220, 224–225 (1962), and cases there cited.

A circuit court's order to arbitrate the entire dispute before the court does deprive the plaintiff of the means, in that case before the trial court, of enforcing the rights claimed. The order effectively terminates that particular case before the trial court. Thus, the order would clearly seem to be final and appealable under the above cited cases.

Nevertheless, in *Maietta v. Greenfield,* 267 Md. 287, 289–294, 297 A.2d 244, 246–248 (1972), this Court held that a circuit court order, directing that the parties submit to arbitration the dispute before the Court, was not appealable. The Court relied primarily on a provision in the Maryland Uniform Arbitration Act as it then existed, Code (1957, 1968 Repl.Vol.), Art. 7, § 18. Former Art. 7, § 18, contained a list of orders in arbitration cases that were appealable, and the list did not include an order compelling arbitration.

In *Litton Bionetics v. Glen Construction Co.,* 292 Md. 34, 39–42, 437 A.2d 208, 211–212 (1981), however, this Court ruled that the holding of the *Maietta* case had been abrogated by the General Assembly. In *Litton Bionetics,* 292 Md. at 39, 437 A.2d at 211, the appellee, in an attempt to have the appeal dismissed under *Maietta,* characterized the trial court's order as one which "in effect directs arbitration of two disputes which are to proceed separately." This Court accepted the appellee's characterization of the trial court's order but denied the motion to dismiss. We pointed out that former Article 7, containing the Maryland Uniform Arbitration Act, was repealed as part of the recodification

process, and was replaced by §§ 3–201 through 3–234 of the Courts and Judicial Proceedings Article. The Maryland Uniform Arbitration Act, as re-enacted as part of the Courts and Judicial Proceedings Article, effective in 1974, did not include a list of orders in arbitration cases that were appealable. Furthermore, we stated in *Litton Bionetics*, 292 Md. at 40, 437 A.2d at 211, that "[t]he treatment of the provisions of former Art. 7, § 18 in the revision is an instance in which a substantive change was intentionally made." Judge Rodowsky for the Court in *Litton Bionetics* went on to conclude (292 Md. at 41–42, 437 A.2d at 212):

"The rule applied in *Maietta* is no longer the law. The present Maryland Uniform Arbitration Act does not expressly deny the right of appeal from a final judgment entered by a court in the exercise of jurisdiction under that statute. Thus, the question is simply whether the order appealed from constitutes a final judgment. Because the order denied all of the relief sought by Litton and completely terminated the action in the circuit court, it is an appealable final judgment. *Department of Public Safety v. LeVan*, 288 Md. 533, 419 A.2d 1052 (1980)."

Consequently, as held in *Litton Bionetics*, an order compelling the parties before the trial court to submit their dispute to arbitration, thereby denying all relief sought in the trial court and terminating the action there, is a final appealable judgment.[3] This holding is in accord with nu-

---

**3.** There is language in the *Maietta v. Greenfield* opinion which seems to suggest that, even when a trial court orders arbitration of the entire matter before the court, the trial court under the Uniform Arbitration Act still retains jurisdiction over the case, and the lawsuit is still pending in the trial court until a post-arbitration order is entered by the court confirming, modifying or vacating the arbitration award. This suggestion in *Maietta* is not in accord with the statute. The Maryland Uniform Arbitration Act indicates that a post-arbitration order is entered only pursuant to a petition requesting such an order, thereby initiating a new case in the circuit court. Code (1974, 1989 Repl.Vol.), §§ 3–223 and 3–224 of the Courts and Judicial Proceedings Article. Courts dealing with arbitration statutes like Maryland's, *i.e.*, statutes which do not contain a list of appealable orders, generally hold that an order compelling arbitration terminates the litigation in

merous decisions by this Court that a trial court's order, terminating the action in that court and remanding the parties to another tribunal for resolution of their dispute, is final and appealable. *See, e.g., Wilde v. Swanson, supra,* 314 Md. at 85, 548 A.2d at 839; *Carroll v. Housing Opportunities Comm'n,* 306 Md. 515, 520, 510 A.2d 540, 542 (1986); *Eastern Stainless Steel v. Nicholson,* 306 Md. 492, 501–502, 510 A.2d 248, 252–253 (1986); *Md. Comm'n On Human Rel. v. B.G. & E. Co.,* 296 Md. 46, 52–53, 459 A.2d 205, 209–210 (1983); *Brown v. Baer,* 291 Md. 377, 385–386, 435 A.2d 96, 100–101 (1981); *Schultz v. Pritts,* 291 Md. 1, 6, 432 A.2d 1319, 1322–1323 (1981); *Department of Public Safety v. LeVan,* 288 Md. 533, 544, 419 A.2d 1052, 1057 (1980).

Moreover, courts elsewhere, under statutory provisions governing appeals which are similar to Maryland's, have agreed that an order to arbitrate is a final ruling and may be appealed. *See, e.g., Dewart v. Northeastern Gas Transmission Co.,* 139 Conn. 512, 95 A.2d 381 (1953) (order compelling arbitration terminates a "separate and distinct proceeding" and is therefore appealable); *Evansville–Vanderburgh School Corp. v. Evansville Teachers Assoc.,* 494 N.E.2d 321, 323 (Ind.App.1986) ("we are of the opinion that an order compelling arbitration is an appealable final order ...."); *Cajun Electric Power Cooperative, Inc. v. Louisiana Power & Light Co.,* 334 So.2d 554 (La.App.1976) (order

---

the trial court. Any order confirming, modifying or vacating the arbitration award is entered in a legally distinct proceeding. *See, e.g., Dewart v. Northeastern Gas Transmission Co.,* 139 Conn. 512, 514, 95 A.2d 381, 381–382 (1953) ("[T]he bringing of new applications for the confirmation or vacating of awards ... are separate proceedings"), *citing Matter of Marchant v. Mead Morrison Mfg. Co.,* 252 N.Y. 284, 292, 169 N.E. 386, 388 (1929). *See also, e.g., County of Durham v. Richards & Associates, Inc.,* 742 F.2d 811, 814 (4th Cir.1984) ("in the perhaps unlikely event that enforcement of the award would be requested, the request would have to come through a separate proceeding"); *University Life Ins. Co. of America v. Unimarc Ltd.,* 699 F.2d 846, 850 (7th Cir.1983) (party who prevails in arbitration may bring a "fresh proceeding in the court below ... to enforce the award").

compelling arbitration was a determination of the merits of a petition to compel arbitration and was a final judgment); *Machine Products Co. v. Prairie Lodge,* 230 Miss. 809, 820, 94 So.2d 344, 346 (1957) ("the decree [ordering arbitration] also partook of the nature of a final decree, since once arbitration was accomplished, all of the relief prayed for by appellees would have been granted"); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Griesenbeck,* 21 N.Y.2d 688, 287 N.Y.S.2d 419, 234 N.E.2d 456 (1967) (order to arbitrate was final and appealable).[4]

There are numerous federal cases which hold that an order compelling arbitration is a final and appealable judgment under 28 U.S.C. § 1291, the federal analogue to § 12–301 of the Maryland Courts and Judicial Proceedings Article. *See, e.g., Intern. Union, UAW v. United Screw & Bolt Corp.,* 941 F.2d 466, 472 (6th Cir.1991); *IUE AFL–CIO Pension Fund v. Barker & Williamson,* 788 F.2d 118, 122 (3d Cir.1986) ("Because the district court compelled arbitration, its order is reviewable as a final judgment under 28 U.S.C. § 1291"); *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.,* 784 F.2d 831, 833 (7th Cir.1986) (order to arbitrate is final and appealable if it terminates all proceedings in the district court); *Howard Elec. & Mech. v. Frank Briscoe Co.,* 754 F.2d 847, 849 (9th Cir.1985) ("arbitration orders, when rendered in the course of an ongoing action, are immediately appealable final orders"); *County of Durham v. Richards & Associates, Inc., supra,* 742 F.2d 811, 812–813 (4th Cir.1984) (order compelling arbitration disposed of the entire case on its merits, and was therefore an appealable final order); *Twin City Monorail, Inc. v. Robbins & Myers, Inc.,* 728 F.2d 1069, 1071 (8th Cir.1984); *University Life Ins. Co. of America v. Unimarc Ltd.,* 699 F.2d 846, 848 (7th Cir.1983).

---

**4.** There are, however, cases to the contrary. *See generally* Annotation, *Appealability of State Court's Order or Decree Compelling or Refusing to Compel Arbitration,* 6 A.L.R. 4th 652, § 3[b] (1981).

The circuit court's order in the case at bar concluded the matter before the court. The court's order dismissing Mr. Horsey's petition of contempt/counterclaim and directing arbitration was a final and appealable judgment.

## II.

■ For purposes of this appeal only, we shall assume that the trial judge correctly interpreted the spousal support provision of the separation agreement to mean that the fact of Mrs. Horsey's continuing employment after August 16, 1984, triggered into operation the modification provisions, including the agreement to arbitrate. Mrs. Horsey argues, however, that the parties had clearly waived arbitration and that, therefore, the trial judge erred in ordering arbitration. We agree.

■ Generally, the right to arbitrate a dispute is a matter of contract between the parties, and, as such, it may be waived. *Chas. J. Frank, Inc. v. Assoc. Jewish Charities*, 294 Md. 443, 448, 450 A.2d 1304, 1306 (1982). A party's intent to waive arbitration " 'must be clearly established and will not be inferred from equivocal acts or language.' " *BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 644, 343 A.2d 529, 533 (1975). While the determination of whether the parties in a given case have waived arbitration obviously "turns on the factual circumstances of each case," *Chertkof v. Southland Corp.*, 280 Md. 1, 5-6, 371 A.2d 124, 127 (1977), our cases have established certain principles governing the determination of whether arbitration has been waived.

Thus, we have stated that "[w]here the parties seek to resolve certain arbitrable matters through litigation, the right to arbitration is waived as to those matters," *NSC Contractors v. Borders*, 317 Md. 394, 402, 564 A.2d 408, 412 (1989). In *Borders*, an architect refused to certify final payment to a contractor because of a defect in the contractor's brickwork. The contractor filed a petition to establish and to enforce a mechanic's lien in the amount of the

balance due. The parties' contract granted the architect authority to reject a contractor's work and withhold money, and provided for arbitration to review the architect's decisions. After trial and appeal, the matter reached this Court. We held that the withholding of money was arbitrable under the contract, but that the parties had waived arbitration, saying (317 Md. at 402–403, 564 A.2d at 412):

> "In the present case, there was no demand for arbitration by either party. NSC stated in the petition for a writ of certiorari that the parties voluntarily waived their right to arbitration. Borders does not contest this position. NSC sought redress in the Circuit Court for Howard County by filing a claim for monetary damages seeking a final judgment order. This use of litigation to resolve the dispute as to the proper amount of money withheld resulted in a waiver of arbitration."

*See also Chas. J. Frank, Inc. v. Assoc. Jewish Charities,* *supra,* 294 Md. at 450, 450 A.2d at 1307.

Similarly, the parties in the case at bar unequivocally waived their contractual right to arbitration as a means for resolving their dispute. Neither party demanded arbitration at any stage of the proceedings, and both parties' actions were "inconsistent with an intention to insist upon enforcing" their right to arbitrate. *BarGale Indus., Inc. v.* *Robert Realty Co., supra,* 275 Md. at 643, 343 A.2d at 533.

Judge McAuliffe, in his concurring and dissenting opinion, contends that Mr. Horsey's waiver was equivocal and was conditioned upon the court's ability to resolve the modification issue. The record in this case does not support this contention. In their initial skirmishes, neither party invoked the arbitration clause. Each party separately filed claims for relief in the circuit court, calling on the court to resolve the dispute. At no time did Mr. Horsey suggest or intimate that there should be arbitration if the court was unable to grant him relief.

As previously mentioned, at the trial both parties expressly indicated that they waived arbitration. Mrs. Horsey stated that the arbitration clause was either waived or

unenforceable. Mr. Horsey also stated that the arbitration clause was waived, and, in addition, characterized it as "void." Mr. Horsey's attorney repeatedly accused Mrs. Horsey's attorney of adopting an equivocal position concerning arbitration, in contrast to Mr. Horsey's own unequivocal waiver.[5]

In his post-trial memorandum, Mr. Horsey again stated that "the parties have, by their actions waived any right to an arbitration proceeding" and characterized arbitration as a "non-issue" in the case. In her post-trial memorandum, Mrs. Horsey also reiterated her position that arbitration had been waived.

In oral argument before this Court, the parties acknowledged that they had each waived their contractual rights to arbitration. Mrs. Horsey, through counsel, stated that "both parties have unequivocally waived" arbitration. Mr. Horsey, through counsel, stated that his intent in bringing the circuit court action was to waive arbitration.

It is obvious that the parties had clearly and unconditionally waived arbitration. It was error for the trial court to order them to arbitrate in the face of such waiver.[6]

### III.

In light of the waiver of arbitration, the circuit court's order must be reversed and the case must be remanded to

---

**5.** At trial, Mr. Horsey's attorney accused Mrs. Horsey's attorney of "taking both sides of this arbitration question." Mr. Horsey's counsel then stated that "Mr. Horsey concedes ... that the arbitration clause is too vague to be enforceable and Your Honor cannot refer it." Judge McAuliffe now attributes the same equivocation to Mr. Horsey which Mr. Horsey's attorney had attributed to Mrs. Horsey.

**6.** Judge McAuliffe, in his concurring and dissenting opinion, states: "The trial court found that if judicial enforcement of the contract was not available the parties had not waived their right to arbitration." Judge McAuliffe goes on to "agree with the trial judge that any such waiver was conditioned upon the availability of judicial relief." The trial judge made no such finding. Instead, the judge simply refused to recognize the legal effect of the parties' actions, as well as their affirmative waivers, when he said: "Waiver cannot be inferred from the mere lack of assertion of a right, which is all that is shown here."

that court. The remaining issues concern the action which the circuit court should take upon remand.[7] *See* Maryland Rule 8–131(a).

### A.

As the separation agreement in this case was executed prior to 1976, the statutory provisions for judicial modification of spousal support, set forth in Code (1984, 1991 Repl.Vol.), §§ 8–103(b) and (c) and 8–105(b) of the Family Law Article, are inapplicable.[8] This case is governed by the

---

7. Neither side suggests that further negotiations might resolve the matter. Negotiations throughout the summer and fall of 1988 failed to produce an agreement upon the amount of "alimony." It would appear that whatever obligation there might have been under the agreement for the parties to negotiate was met. As Mr. Horsey points out in his brief, any further "attempt to agree on a fair reduction in the alimony payments would [likely] fail." (Respondent's Brief, at 28). Moreover, as discussed in Part III B of this opinion, *infra,* a contract provision, whereby the parties simply agree to attempt to reach a future agreement, is generally unenforceable.

8. Section 8–103 states in pertinent part as follows:
 " * * *

 (b) *Exception for provision concerning support of spouse.*—The court may modify any provision of a deed, agreement, or settlement with respect to spousal support executed on or after January 1, 1976, regardless of how the provision is stated, unless there is a provision that specifically states that the provisions with respect to spousal support are not subject to any court modification.

 (c) *Certain exceptions for provision concerning alimony or support of spouse.*—The court may modify any provision of a deed, agreement, or settlement with respect to alimony or spousal support executed on or after April 13, 1976, regardless of how the provision is stated, unless there is:

 (1) an express waiver of alimony or spousal support; or

 (2) a provision that specifically states that the provisions with respect to alimony or spousal support are not subject to any court modification."

 Section 8–105 provides as follows:

 "**§ 8–105. Power of court to enforce or modify provisions.**

 (a) *Enforcement by power of contempt.*—(1) The court may enforce by power of contempt the provisions of a deed, agreement, or settlement that are merged into a divorce decree.

 (2) The court may enforce by power of contempt or as an independent contract not superseded by the divorce decree the provisions of a deed, agreement, or settlement that contain language that

legal principles applicable to pre–1976 spousal support agreements. Our discussion of the controlling law in this part of the opinion, therefore, relates to spousal support agreements and decrees entered into prior to 1976.

 "Alimony" in a legal sense (often referred to as "technical alimony") is a periodic allowance for spousal support, payable under a judicial decree, which terminates upon the death of either spouse or upon the remarriage of the spouse receiving the payments or upon the reconciliation and cohabitation of the parties. *See, e.g., Thomas v. Thomas,* 294 Md. 605, 614–621, 451 A.2d 1215, 1221–1223 (1982); *Goldberg v. Goldberg,* 290 Md. 204, 207–210, 428 A.2d 469, 472–473 (1981); *Brown v. Brown,* 278 Md. 672, 675, 366 A.2d 18, 20 (1976); *Bebermeyer v. Bebermeyer,* 241 Md. 72, 76–77, 215 A.2d 463, 466 (1965); *Schroeder v. Schroeder,* 234 Md. 462, 464, 200 A.2d 42, 45 (1964); *McCaddin v. McCaddin,* 116 Md. 567, 573–574, 82 A. 554, 556 (1911); *Wallingsford v. Wallingsford,* 6 H. & J. 485, 488–489 (1823). A court exercising equitable jurisdiction has authority to modify its prior award of technical alimony. *Goldberg v. Goldberg, supra,* 290 Md. at 209, 428 A.2d at 473; *Brown v. Brown, supra,* 278 Md. at 675, 366 A.2d at 20; *Heinmuller v. Heinmuller,* 257 Md. 672, 677, 264 A.2d 847, 850 (1970); *Stevens v. Stevens,* 233 Md. 279, 282, 284, 196 A.2d 447, 449 (1964); *Lopez v. Lopez,* 206 Md. 509, 520, 112 A.2d 466, 471 (1955); *Clarke v. Clarke,* 149 Md. 590, 592, 131 A. 821, 822 (1926).

---

the deed, agreement, or settlement is incorporated but not merged into a divorce decree.

(b) *Modification.*—The court may modify any provision of a deed, agreement, or settlement that is:

(1) incorporated, whether or not merged, into a divorce decree; and

(2) subject to modification under § 8–103 of this subtitle."

Section 8–103(b) originated with Ch. 849 of the Acts of 1975, effective January 1, 1976, and § 8–103(c) originated with Ch. 170 of the Acts of 1976, effective April 13, 1976. Each of these statutes expressly provided that it would not affect agreements entered into prior to the statutes' effective dates. Section 8–105 originated with Ch. 589 of the Acts of 1989 and Ch. 443 of the Acts of 1990.

■ Since the spousal support under the Horsey's separation agreement, as "incorporated as a part of" the divorce decree, was not terminable upon the death of Mr. Horsey, it was not alimony; instead it was contractual spousal support. Both sides in this Court agree upon this proposition.

■ Mrs. Horsey argues that because the spousal support in this case was not technical alimony, it cannot be modified by the trial court. Mr. Horsey, on the other hand, contends that the contractual spousal support provision, although not technical alimony, was "merged" into the decree and that, therefore, the amount of spousal support is modifiable by the trial court under the trial court's "continuing equitable jurisdiction over the Decree." (Respondent's Brief, at 17). On this issue, our decisions clearly support Mrs. Horsey's position and require the rejection of Mr. Horsey's argument.

The leading case of *Emerson v. Emerson*, 120 Md. 584, 586, 87 A. 1033, 1034 (1913), is directly in point. There, the parties entered into an agreement providing, *inter alia*, "[t]hat the husband shall pay the wife $28,800.00 per annum, in monthly installments during her life." Another paragraph of the agreement provided for the deposit with trustees of stock certificates representing stock in the Emerson Drug Company "to secure the payment of the alimony." The agreement also stated that its provisions relating to alimony were "to be incorporated in any decree of absolute divorce, that may be granted the plaintiff under the bill now pending...." A divorce decree was passed by the Circuit Court of Baltimore City, and the above-mentioned "provisions of the agreement were adopted by the court, and ... the exact language of the agreement was incorporated in the decree." 120 Md. at 587, 87 A. at 1034. Mrs. Emerson subsequently remarried, and her former husband sought, in the Circuit Court of Baltimore City, an order "modifying the decree, to the extent of relieving him of all further obligations for the payment of alimony...." *Ibid.*

The circuit court in *Emerson* sustained a demurrer to the action, and the former husband appealed. In affirming the judgment, this Court initially held that courts retain "continuing jurisdiction over [alimony] decrees" and that, although an earlier a vinculo divorce decree with an alimony provision "was final," nevertheless "the alimony could be increased or diminished by the Court, from time to time, as circumstances demanded it." 120 Md. at 591, 87 A. at 1036. Next, the Court held that when the recipient of the alimony remarries, the former husband should be relieved of his obligation to pay alimony, 120 Md. at 596, 87 A. at 1038. The Court went on to hold that if the parties prior to the divorce decree have reached an agreement as to alimony, and if the trial court "is satisfied that it is a proper settlement," it is appropriate for the court "to incorporate" in the decree the agreed-upon provisions as to alimony. In this event, the agreement "will receive the sanction of a decree" and "the validity of the award depends not upon the agreement, but upon the judgment or decree." 120 Md. at 597, 87 A. at 1038. As to modification under these circumstances, the Court stated (*ibid.*):

"We are of the opinion, that if a Court approves the provisions of an agreement as to alimony it can incorporate them in its decree, but it, nevertheless, has the same power of modification of the decree as it had in the absence of an agreement. If then remarriage is a ground for the annulment of the provision for alimony, the annulment will take place the same in a decree based upon an agreement as in one founded upon testimony."

Nevertheless, even though the agreement in the case before it had been incorporated into the decree, the Court in *Emerson* held that the former husband was not entitled to have the provisions modified or to be relieved of the obligation to pay spousal support because the spousal support did not constitute "alimony." The Court concluded (120 Md. at 598, 87 A. at 1038–1039):

"Although the bill prayed for alimony, and the beginning of the agreement stated that on the question of

alimony no testimony need be taken, but that the agreement should be followed, nevertheless, although they called it alimony, it was not alimony as understood and followed under the Maryland law. It was not alimony as the Court, in the absence of the agreement, would have decreed. A mere recital of the provisions shows that under our statutes and decisions no such decree could have been passed, if this appellant had not been in agreement upon it. It was a plain attempt upon his part to have allowed to his wife something more than, under the law, could have been allowed as alimony and as the learned judge below said, we 'should blind ourselves to the fact if we should treat that arrangement as one of alimony.' If for alimony, why did he bind himself to pay these annual sums up and until the death of the wife, irrespective of whether or not she survived him? Was not that providing more that he could have been compelled to provide under the terms of alimony? It is settled in this State, that alimony ceases upon the death of either of the parties. *Wallingsford v. Wallingsford,* 6 H. & J. 485. ... The Court having embodied his agreement in the decree, we are of the opinion that a Court of Equity should not disturb it."

The principles set forth in *Emerson* were followed in *Dickey v. Dickey,* 154 Md. 675, 141 A. 387 (1928). In *Dickey,* while divorce proceedings were pending, the husband and wife entered into an agreement providing " 'for permanent alimony in the sum of twenty-five dollars per week, and that the said sum shall be payable unto her until her death or remarriage....' " 154 Md. at 677, 141 A. at 388. The "agreement was filed and was submitted to the chancellor, who, in granting the wife an absolute divorce, incorporated the agreement of the parties in the decree, and so gave it the court's sanction." 154 Md. at 678, 141 A. at 388. The divorce decree in *Dickey* read as follows (*ibid.*): " 'And it is further ordered that said defendant shall pay said complainant as permanent alimony the sum of twenty-five dollars per week, accounting from the date of this

decree, until her death or remarriage, or until the further order of this court.'" More than two years after the decree, the former husband filed a petition asking that the amount of the weekly "alimony" payments be reduced. The chancellor, however, sustained the former wife's demurrer to this petition, holding that the spousal support payments were not alimony and thus were not subject to alteration by the chancellor. This Court agreed with the chancellor's ruling, saying (154 Md. at 678–679, 141 A. at 389):

> "If, however, the allowance to the wife in the decree is the result of a previous agreement between the spouses and does not fall within the accepted definition of alimony, so that it would have been impossible for the chancellor to have allowed permanent alimony as the decree provides, then, notwithstanding the parties and even the court called it alimony, the allowance for the wife in the decree was not alimony, and a court of equity has no power to modify the decree as in the case of an award of alimony. *Infra.* The agreement by the husband to pay the wife a weekly sum of money until her death or remarriage did not limit his payments to the joint lives of the spouses, and hence was not what the court could have decreed as alimony; but this agreement, providing the wife with a weekly stipend without reference to whether or not the husband survived her or they lived separate and apart, was properly incorporated in the decree, as was determined by *Emerson v. Emerson*, 120 Md. 584, 598, 599 [87 A. 1033], and *Neubold v. Neubold*, 133 Md. 170, 174, 175 [104 A. 366]; *Miller's Eq. Proc.*, § 269; 2 *Bishop, Marriage and Divorce*, § 885.

> "When tested by the rules stated, the decree in this case was not for alimony, but was an adoption by the chancellor of a prior agreement between the parties."

More recently, in *Goldberg v. Goldberg, supra,* 290 Md. 204, 428 A.2d 469, this Court reiterated that a separation agreement's provisions for spousal support, which were "incorporated by reference" in a divorce decree, were not

subsequently modifiable by the trial court if the support payments did not constitute "technical alimony." In *Goldberg*, the Court concluded that the support payments were not technical alimony because the parties, in their separation agreement, did not intend that the payments could be judicially modified. In language directly applicable to Mr. Horsey's argument in the present case, Judge Digges for the Court in *Goldberg* stated (290 Md. at 209–210, 428 A.2d at 473): "where the parties do not intend an award of technical (and thus modifiable) alimony, but rather provide for contractual spousal support in the separation compact, the fact that the agreement, or that provision of it, is incorporated into a decree does not operate to transform the contractual payments into technical alimony."

Numerous other cases in this Court are in accord with the *Emerson*, *Dickey*, and *Goldberg* decisions. *See, e.g., Brown v. Brown, supra*, 278 Md. at 675, 366 A.2d at 21 ("If the support provision is not alimony, . . . it may not be modified, . . . unless the agreement . . . [was] entered into subsequent to 1 January 1976"); *Heinmuller v. Heinmuller, supra*, 257 Md. at 677, 264 A.2d at 850 ("The language . . . specifically envisions an agreement continuing to operate, subject to control and revision by the court. [The] cases point out that such a provision was of no force because in fact the sum provided was not technical alimony, and the court then had no power to modify it"); *Bellofatto v. Bellofatto*, 245 Md. 379, 386, 226 A.2d 313, 316 (1967) ("We conclude that the support payments of $25 a week provided for in the separation agreement were not alimony. . . . The Chancellor had no power to increase or decrease these support payments as this would modify the separation agreement between the parties"); *Bebermeyer v. Bebermeyer, supra*, 241 Md. at 77, 215 A.2d at 466 ("In the case at bar, the payments are not limited to the joint lives of the spouses. . . . It is clear to us that any payments for the wife's support and maintenance were not alimony, and could not be subsequently modified by order of court"); *Schroeder v. Schroeder, supra*, 234 Md. at 464–465, 200

A.2d at 43–44 ("notwithstanding the recitation that the payments were alimony subject to court modification, since there was no specific mention that payments were to continue only during the joint lives of the parties, they were not alimony. * * * We therefore hold that the chancellor was correct in dismissing the appellant's petition for modification of payments since such payments were not alimony"); *Grossman v. Grossman,* 234 Md. 139, 145, 198 A.2d 260, 263 (1964) ("Payments which continue after the decease of the husband are clearly not alimony. * * * It was not alimony, and a court of equity has no right to modify a contract between the parties absent collusion, mistake or fraud").

In arguing that a trial court has the same authority to modify contractual spousal support as it has to modify technical alimony, as long as the provisions for contractual spousal support are "merged" into the decree, Mr. Horsey relies on *Johnston v. Johnston,* 297 Md. 48, 465 A.2d 436 (1983), and on the Court of Special Appeals' decision in *Mendelson v. Mendelson,* 75 Md.App. 486, 541 A.2d 1331 (1988). These cases do not constitute authority supporting Mr. Horsey's contention.

The *Johnston* case before this Court did not involve the question of whether the amount of money payable as spousal support under a prior agreement was subject to judicial modification. Instead, the issue resolved by this Court in *Johnston* was "whether a separation agreement approved and incorporated but not merged in a divorce decree may be collaterally attacked." 297 Md. at 49, 465 A.2d at 437. Moreover, the Court in *Johnston* pointed out that where a provision of a separation agreement becomes "incorporated" into and "part of the [divorce] decree," it is "modifiable by the court *where appropriate,*" 297 Md. at 57, 465 A.2d at 440, emphasis added. Immediately thereafter, the *Johnston* opinion cited *Goldberg v. Goldberg, supra,* 290 Md. 204, 428 A.2d 469, which had held that judicial modification of a contractual spousal support provision, incorporated into a divorce decree, was appropriate only if the spousal sup-

port constituted technical alimony. Since the issue of judicial modification of the amount of spousal support was not before this Court in *Johnston*, the opinion does not disclose the nature of the spousal support under the parties' separation agreement. The *Johnston* opinion, therefore, is not authority supporting Mr. Horsey's position.

The Court of Special Appeals' opinion in *Mendelson v. Mendelson, supra,* 75 Md.App. 486, 541 A.2d 1331, did involve a request for judicial modification of spousal support payable under a separation agreement. The separation agreement in *Mendelson,* however, was entered into on July 14, 1976, and thus the matter of judicial modification was controlled by Ch. 849 of the Acts of 1975 and Ch. 170 of the Acts of 1976. Consequently, the *Mendelson* opinion furnishes no authority with respect to pre–1976 spousal support agreements.[9]

As previously discussed, the spousal support provided for in the Horseys' separation agreement was not technical alimony because it did not terminate upon Mr. Horsey's death. Alternatively, the spousal support probably was not technical alimony under the principles set forth in *Goldberg v. Goldberg, supra,* because the provisions of the separation agreement, and particularly the arbitration clause, indicate that the parties did not intend that the spousal support be subject to judicial modification. Since the spousal support under this pre–1976 agreement was not alimony, the trial judge on remand has no authority to modify the amount as part of his "continuing jurisdiction ... over the Decree." (Respondent's brief at 17).

---

**9.** In addition, the interpretation of Ch. 849 of the Acts of 1975 and Ch. 170 of the Acts of 1976, set forth in *Mendelson,* has been criticized. *See* Fader and Gilbert, *Maryland Family Law,* § 16.10, at 360–363 (1990). The *Mendelson* interpretation of these statutes was largely abrogated by the General Assembly in Ch. 589 of the Acts of 1989 and Ch. 443 of the Acts of 1990, Code (1984, 1991 Repl.Vol.), § 8–105 of the Family Law Article. Thus *Mendelson* furnishes little authority with regard to separation agreements entered into after January 1, 1976.

B.

■ Mr. Horsey also appears to argue, and Judge McAuliffe in his concurring and dissenting opinion contends, that even if the trial court can not modify the amount of spousal support provided for in the separation agreement as part of its continuing jurisdiction over the divorce decree, the court can, as a matter of contract law, accomplish the modification. It is suggested that because the contract provided for modification of spousal support under certain circumstances, the trial court can effect the modification as part of its equitable power to specifically enforce the contract. This theory would have the court perform the function of the arbitrator where arbitration has been waived.

As pointed out above, the provisions of the Horseys' separation agreement are inconsistent with an intent that a court could change the amount of the monthly contractual support payments. A contractual provision to resolve a dispute by arbitration demonstrates an intent that the dispute not be resolved by a court. Moreover, even where parties have in their separation agreements expressly provided that courts could modify contractual spousal support not meeting the requirements of technical alimony, this Court has held that trial courts lack the authority to modify the support payments.

For example, in *Schroeder v. Schroeder, supra,* 234 Md. at 464, 200 A.2d at 43, although the contract contained "the recitation that the [spousal support] payments were ... subject to court modification," this Court held that a Chancellor had no authority to modify the contractual spousal support payments. In *Heinmuller v. Heinmuller, supra,* 257 Md. at 677, 264 A.2d at 850, Judge Digges for the Court, referring to *Schroeder v. Schroeder, supra,* and similar cases, stated:

"The language of the agreements in those cases specifically envisions an agreement continuing to operate, subject to control and revision by the court. Those cases point out that such a provision was of no force because in

fact the sum provided was not technical alimony, and the court then had no power to modify it."

The position taken in Judge McAuliffe's concurring and dissenting opinion is directly contrary to the above-discussed cases and would require us to overrule them.[10]

Moreover, for a court to decide how much the contractual monthly payments to Mrs. Horsey should be reduced, under circumstances where the parties have not agreed upon the amount of reduction or upon terms or a formula for ascertaining the amount of the reduction, would place the court in a position of making a contract for the parties. As this Court has stated on numerous occasions, however, "the courts cannot make a contract for the parties or supply missing terms," and "if a contract omits essential terms," it is "unenforceable." *Rocklin v. Eanet,* 200 Md. 351, 357, 89 A.2d 572, 574–575 (1952). *See, e.g., Geo. Bert. Cropper, Inc. v. Wisterco,* 284 Md. 601, 619, 399 A.2d 585, 594 (1979) ("for a contract to be enforceable, it is necessary that it be sufficiently specific to enable a court to determine the intention of the parties"); *L & L Corporation v. Ammendale,* 248 Md. 380, 385, 236 A.2d 734, 737 (1968) (agreement on "an essential term ... [is] required to make or modify a contract ... 'because neither the court nor jury could make a contract for the parties' "); *Hoffmann v. County Title Co.,* 240 Md. 199, 203, 213 A.2d 563, 565 (1965); *Standard Homes v. Pasadena Co.,* 218 Md. 619, 625–626, 147 A.2d 729, 733 (1959); *Robinson v. Gardiner,* 196 Md. 213, 217, 76 A.2d 354, 356 (1950) ("no action will lie upon a contract ... where such a contract is ... uncertain in its essential terms.

---

**10.** Not only does Judge McAuliffe's opinion ignore this body of Maryland law in concluding that contractual spousal support may be judicially modified where the parties so intend, but Judge McAuliffe's view is inconsistent with the provisions of § 8–103 of the Family Law Article. The statute expressly altered Maryland law, and authorized judicial modification of contractual spousal support, only for agreements entered into after January 1, 1976. The concurring and dissenting opinion ignores the effective date of the statute by allowing modification of the contractual support provided for in the Horseys' pre–1976 agreement.

\* \* \* [I]t is void because neither the court nor jury could make a contract for the parties. Such a contract cannot be enforced in equity nor sued upon in law").

Because of the waiver of arbitration, the modification provision of the Horseys' separation agreement is simply an agreement to attempt to agree in the future, without any guidelines, formula or basis for ascertaining the amount of modification. In accordance with the principles that the terms of a contract must be sufficiently definite for enforcement and that a court will not make a contract for the parties, it is generally held that an "agreement to agree" is unenforceable. As Judge Hammond stated for this Court in *Grooms v. Williams,* 227 Md. 165, 172, 175 A.2d 575, 578 (1961), "[t]here was, at best, an agreement to agree in the future ..., and this is not a sufficient basis for a specifically enforceable contract." *See, e.g., Rosenfield v. United States Trust Co.,* 290 Mass. 210, 216, 195 N.E. 323, 326, 122 A.L.R. 1210, 1216 (1935) ("An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto"); *Ault v. Pakulski,* 520 A.2d 703, 705 (Me.1987) (provision in a separation agreement whereby husband and wife agreed to establish in the future a trust fund for educating their children, and agreed to agree in the future with regard to the amounts each would pay, and the Supreme Judicial Court of Maine held that the provision was an unenforceable "agreement to agree"); *Jenks v. Jenks,* 385 S.W.2d 370, 375–376 (Mo.App.1965) (provision in a separation agreement whereby the parties agreed to negotiate in the future concerning a certain matter and if they were unable to agree, to submit the matter to arbitration; arbitration was later waived, and the Missouri court held: "We have nothing, therefore, except an agreement to agree in the future on the single material object the parties intended to accomplish. Such an agreement is a nullity"). *See also, e.g., Belitz v. Riebe,* 495 So.2d 775 (Fla.App.1986); *Russell v. City of Atlanta,* 103 Ga.App. 365, 119 S.E.2d 143 (1961); *Walker v. Keith,* 382 S.W.2d 198, 201 (Ky.1964) ("an agreement to agree cannot constitute a binding contract");

*Joseph Martin, Jr., Delicatessen v. Schumacher*, 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981); *Gregory v. Perdue, Inc.*, 47 N.C.App. 655, 267 S.E.2d 584 (1980); 1 Williston on Contracts § 45, at 149 (3d ed.); 1 Corbin on Contracts § 29, at 85 (West 1963, 1992 Supp.); L. Simpson, *Contracts*, § 45 (2d ed. 1965) ("There can be no such thing as an agreement to agree").[11]

The decision of the Court of Special Appeals in *Simmons v. Simmons*, 37 Md.App. 202, 376 A.2d 1147 (1977), is quite pertinent. In *Simmons* the separation agreement between the husband and wife, while resolving several matters, provided as to spousal support "that since Husband is unemployed, Husband shall not be required at this time to pay to the wife any sum for her support and maintenance." Nevertheless, the separation agreement contemplated that spousal support payments would be made if the husband became employed or otherwise received income, and it required that the husband notify the wife in such event. The agreement also provided "that the parties agree to review the matter of support payments within sixty (60) days of the date of this Agreement and within sixty-day cycles thereafter." 37 Md.App. at 204, 376 A.2d at 1148. Subsequently the husband became employed, and the parties

---

**11.** Under certain circumstances, in the commercial area and with regard to lease rentals, some exceptions to the principle that an agreement to agree in the future is unenforceable have been recognized. *See, e.g.,* Maryland Uniform Commercial Code, Code (1975, 1992 Repl.Vol.), § 2–305 of the Commercial Law Article (agreement to reach a future agreement as to price); *Vigano v. Wylain, Inc.*, 633 F.2d 522, 526 (8th Cir.1980); *Hall v. Weatherford*, 32 Ariz. 370, 379–380, 259 P. 282, 285 (1927); *Chaney v. Schneider*, 92 Cal.App.2d 88, 206 P.2d 669 (1949); Calamari and Perillo, *Contracts*, § 2–9(a)(3) at 63–64 (3d ed. 1987) ("Some of the more modern cases ... have recognized that agreements to agree serve a valuable commercial purpose and that the traditional rule may operate unfairly where a party uses the rule to defeat an agreement that the parties intended to be binding"); J. Murray, *Murray on Contracts*, § 38B(1) at 87 n. 58 (3d ed. 1990); Annotation, *Renewal of Lease—Rental To Be Agreed Upon*, 58 A.L.R.3d 500 (1974). We need not explore in the present case the matter of exceptions to the general rule, as the exceptions which have been recognized would not be applicable here.

negotiated but failed to reach an agreement with regard to spousal support. In holding that the agreement to agree was unenforceable, and that the trial judge erred in determining an amount of monthly spousal support which should be paid to the wife, the Court of Special Appeals stated that there were not sufficient agreed-upon terms for a contract, and that, therefore, "[t]here was nothing for the court to enforce. It is as if a court were asked to enforce an agreement 'to sell my house at a price to be negotiated later', when no price had ever been agreed upon." 37 Md.App. at 210, 376 A.2d at 1151.

Similarly, in the case at bar, the provision for modification of the support payments is unenforceable. Mrs. Horsey was entitled to a judgment for the arrearages and to specific performance of the contract to pay her $300.00 per month.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR KENT COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT ELMER E. HORSEY.

McAULIFFE and CHASANOW, JJ., concur and dissent.

McAULIFFE, Judge, concurring in part and dissenting in part.

I agree with the Court's opinion in every respect except as to Section IIIB and the conclusion that the trial court is powerless to give effect to the intention of the parties as expressed by their contract. I believe the parties made it clear in the separation agreement that the spousal support Mr. Horsey agreed to pay was based upon the assumption that Mrs. Horsey had no income at the time the agreement

was executed; that the spousal support payments would continue unchanged for at least 11 years, no matter how much income Mrs. Horsey might have during that period; and, that if at the conclusion of the 11 year moratorium Mrs. Horsey had a source of income and the financial circumstances required a reduction in the spousal support payments, a reduction would be made. The agreement contemplated that the parties would first make a good faith effort to agree upon an appropriate reduction, and if they could not agree, they would proceed to arbitration.

Although the Court seems to assume that the parties established sufficient criteria to allow an arbitrator to carry out their intent, it here decides there were no criteria sufficient to permit a court to grant relief if the parties waived arbitration. I disagree. There was in existence at the time these parties entered into the agreement an entire body of law establishing the factors to be considered by a chancellor in determining whether permanent alimony should be adjusted because of a change in the financial circumstances of the parties. It is this body of law, and its clearly sufficient criteria, that I believe the parties intended to incorporate in their agreement when they spoke of the wife being required to "notify the husband of any change in her financial circumstances requiring an adjustment in the alimony payments." This is consistent with the general rule of contract interpretation that the parties are presumed to know the existing law and to have "had such law in contemplation when the contract was made." *Shell Oil Co. v. Ryckman*, 43 Md.App. 1, 8–9, 403 A.2d 379 (1979). In short, although the provision for spousal support was not technical alimony and therefore could not be adjusted by a chancellor in the exercise of equitable powers, the parties intended to provide for modification under the same criteria that would be used if it were technical alimony, with the single exception that the adjustment, if indeed any was required by the changed circumstances, could only be downward. These are the criteria that an arbitrator would have applied, and if arbitration were waived would guide a court.

This is the only interpretation of the contract that makes sense to me; it is certainly the only interpretation that can give efficacy to the obvious joint intent of the parties that any significant income on the part of Mrs. Horsey would warrant a reappraisal of the circumstances and possibly a reduction in spousal support.

[I]t is very commonly stated that when the terms of agreement have two possible interpretations, by one of which the agreement would create a valid contract and by the other it would be void or illegal, the former will be preferred. This is an advisory rule of interpretation, since it is believed that the parties intend their agreement to be valid rather than invalid, lawful rather than unlawful, and honest and effective rather than fraudulent and voidable.

3 *Corbin on Contracts,* § 546, 170–71 (1960) (footnotes omitted). Giving force to the contract as so interpreted does not create a new contract for the parties, nor does it fix a price or amount where no standards were established to reasonably permit that to be done—it simply embraces the then existing law relating to modification of alimony that I believe the parties intended to incorporate and gives meaning and effect to their agreement.

The majority seems troubled by the fact that a court considering relevant changes in the financial circumstances of the parties will be required to exercise a certain amount of judgment, as opposed to merely applying a precise schedule fixed by the parties, or applying a readily ascertainable factor such as the Consumer Price Index. Certainly the task of the court would be easier if it were called upon only to mechanically apply known or readily ascertainable multipliers, but the requirement that the court exercise discretion, as it would in considering a claim for reduction of technical alimony, should not invalidate the contract or preclude judicial relief.

Courts and juries are frequently called upon to make judgment calls, and even to place a value upon such intangible matters as pain and suffering, in order to give force to a

contract. Perhaps a prime example would be a contract for uninsured motorist insurance coverage. The insurer and insured enter into a contract which provides that if the insured suffers damage because of the negligence of an uninsured motorist, the insurer will pay to the insured the amount that the uninsured tort feasor would be legally obligated to pay. We have held that this contract may be enforced by a direct action against the insurer even though the court or jury in that action must determine such questions as negligence, contributory negligence, and the amount of damages that will fairly and reasonably compensate the insured for injuries caused by another, in order to determine the amount due under the contract. *See Lane v. Nationwide Mutual Ins. Co.*, 321 Md. 165, 169–70, 582 A.2d 501 (1990); *Nationwide Mut. Ins. v. Webb*, 291 Md. 721, 736, 436 A.2d 465 (1981); *Reese v. State Farm Mut. Auto. Ins.*, 285 Md. 548, 554, 403 A.2d 1229 (1979). In effect, a tort action must be tried within the contract action. Even though that procedure involves the exercise of judgment and determinations of fairness, it is appropriate because: 1) it gives force to a valid contract between the parties, and 2) an existing body of tort law is available to permit the trier of fact in the contract action to determine the amount which would have been awarded had such a tort suit been prosecuted. The situation here is analogous.

Alternatively, if the Court is correct in its holding that this contract may be enforced only by arbitration and not by the courts, we should not hold that Mr. Horsey waived his right to arbitration by seeking judicial relief. We addressed the question of waiver of arbitration by participation in judicial proceedings in *Chas. J. Frank, Inc. v. Assoc. Jewish Ch.*, 294 Md. 443, 450 A.2d 1304 (1982). We there reiterated the criteria applicable to the waiver of a contractual right:

A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. '[A]cts relied upon as constituting a waiver of the provi-

sions' of a contract must be inconsistent with an intention to insist upon enforcing such provisions.

*Id.* at 449, 450 A.2d 1304 (quoting *BarGale Indus., Inc. v. Robert Realty,* 275 Md. 638, 643, 343 A.2d 529 (1975)). We further stated:

> The intention to waive must be clearly established and will not be inferred from equivocal acts or language.... Thus, whether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstances of each case.

*Id.* (citations omitted). We concluded that:

> [W]hen a party waives the right to arbitrate an issue by participation in a judicial proceeding, the waiver is limited to those issues raised and/or decided in the judicial proceeding and, absent additional evidence of intent, the waiver does not extend to any unrelated issues arising under the contract. Our conclusion that waiver of the right to arbitrate cannot be inferred in the absence of a clear expression of intent is consonant with Maryland's legislative policy favoring enforcement of executory agreements to arbitrate.

*Id.* 294 Md. at 454, 450 A.2d 1304. Where, as here, the Court holds that the issues cannot be "raised and/or decided in the judicial proceeding," we should not find waiver.

The intentional relinquishment of a known right occurs when a party entitled to arbitration elects instead to have the issues decided by a court. As the majority points out, Mr. Horsey clearly intended to give up his right to arbitration if the issues he raised could be determined by the court. Implicitly, he did not intend to give up his right to arbitrate if the court was powerless to assist in resolving the legitimate controversy existing between the parties. Not only is the record devoid of any indication of such an illogical choice on his part, it expressly reveals the contrary. During the hearing below, Mr. Horsey's attorney stated:

> If your honor decides you don't have jurisdiction, you are going to send [the parties] away to arbitrate.

Mr. Horsey intended to waive arbitration in favor of judicial action—his attorney repeatedly made that clear throughout the hearing. The intent to waive arbitration was, however, clearly contingent upon the ability of the court to resolve the issues, and if this Court finds that the lower court could not resolve those issues, it should not find an "intentional relinquishment of a known right," but should instead leave the parties free to arbitrate.[1]

Mr. Horsey's attorney also advanced the argument that arbitration was not available in this case because the parties had not included in their agreement any method for selection of an arbitrator. As the trial judge pointed out, that argument was simply wrong—the court has authority to appoint an arbitrator when the agreement of the parties does not provide a method of appointment. *See* Maryland Code (1974, 1989 Repl.Vol.) § 3–211(c) of the Courts and Judicial Proceedings Article. Arguing that arbitration is not available as a matter of law is not a waiver of the right to arbitrate if the court finds that arbitration is available.

Mr. Horsey's attorney also argued that the parties should not be required to submit to arbitration because the agreement did not provide for binding arbitration. Again, he was wrong. But that error, and his argument against sending the case to arbitration instead of having the court decide it, should not preclude arbitration if the court finds it is available and has not been waived.

The trial court found that if judicial enforcement of the contract was not available the parties had not waived their right to arbitration. Although I believe judicial relief is available, and that the parties had indeed waived arbitration in favor of that judicial relief, I also agree with the trial

---

1. I do not suggest that the trial court was correct in issuing instructions to the arbitrator, or suggesting that the result of arbitration would be embraced within a later order of the trial court in the same case. As the majority correctly points out, when the trial court determines the case should proceed to arbitration, the pending civil case is ended.

**428**

judge that any such waiver was conditioned upon the availability of judicial relief.

Judge CHASANOW has authorized me to state that he joins in the views stated herein.